**B. F. PITMAN and Bernard Lifshutz, Appellants,**

**v.**

**Dean SANDITEN, Sanditen Properties, Ltd., and Peter Trang, Appellees.**

**No. 16451.**

Court of Civil Appeals of Texas, San Antonio.

Dec. 17, 1980.

Rehearing Denied Feb. 4, 1981.

Douglass D. Hearne, Hearne & Babb, Austin, for appellants.

C. M. Zaffirini, Laredo, R. Michael Casseb, Lang, Cross, Ladon, Boldrick & Green, Richard G. Strong, Casseb, Leon, Rodgers, Strong & Pearl, San Antonio, for appellees.

## OPINION

KLINGEMAN, Justice.

This suit was originally filed by Appellees, Dean Sanditen and Sanditen Properties, Ltd., asking the trial court to enter a judgment declaring a certain lease agreement terminated and further declaring that the Appellants, Pitman and Lifshutz, no longer have any claim or interest in and to the leased premises and all improvements situated thereon. Appellees, Sanditen and Sanditen Properties, Ltd., joined Appellee, Peter Trang, who is Appellants' sublessee, as a party defendant in said suit seeking to require that his rental payments be paid into the registry of the court pending final judgment, which was done by agreement of the parties.

Appellants counter-claimed against Appellees, Dean Sanditen and Sanditen Properties, Ltd., seeking specific performance of their option to purchase and damages.

In this opinion, Pitman and Lifshutz will usually be referred to as appellants; Dean Sanditen and Sanditen Properties, Ltd., will be referred to as "Sanditen"; and Peter Trang will be referred to as "Trang."

Trial was to a jury with numerous special issues being submitted. Based on the jury verdict, the trial court rendered judgment that (a) the lease involved was terminated; (b) all of the interest of appellants in the property was also terminated; and (c) appellants take nothing by their counterclaim. The court further ruled that Trang was entitled to attorney's fees in the amount of $2,500, payable from the funds deposited in the registry of the court by Trang and by appellants, and that any remainder be paid to Sanditen.

In 1978, Sanditen owned a hotel and the land on which it was situated in Laredo, Texas. Sanditen entered into a written contract with appellants whereby appellants purchased the improvements and personal property located on the land and leased the real property underlying said improvements and personal property. This lease agreement granted the appellants an option to purchase the land, exercisable by appellants giving written notice to Sanditen and designating a closing date. Appellants gave notice to exercise the option in January, 1979, specifying a closing date of February 28, 1979. Carlos Zaffirini, the attorney representing Sanditen, received said notice and proceeded to prepare the notes and the deed necessary for the completion of the transaction. Zaffirini testified that around February 25 or 26, 1979, he and John Hemmi, the appellants' attorney, discussed closing the transaction on March 1, 1979, but that Hemmi called back on February 27, 1979, leaving a message that the closing would be handled by mail rather than by meeting of the parties on February 28 or March 1. Zaffirini testified he then sent the necessary documents to Hemmi and that they were probably mailed on March 1, 1979. As a result, the sales transaction did not close on February 28 as initially specified by appellants nor did it close on March 1. The transaction did not close thereafter because, after March 1 had passed without the sale being closed, Sanditen then insisted on payment by appellants of the rent due on March 1 before he would complete the sale. Sanditen notified appellants on March 5 that they were late in making the March 1 rental payment and upon appellants' continued failure to pay said rent, Sanditen notified them that he was terminating the lease.

Appellants' first two points of error assert that the trial court erred in failing to grant appellants' motion for judgment and in failing to order that the purchase and sale between the parties be specifically performed because (1) the undisputed evidence and jury's answers to Special Issues 2 and 3 [1] establish that appellants were entitled to a deed to the property and the use and enjoyment thereof by them on March 1, 1979; and (2) the trial court's actions are based upon a questionable construction of the contract and result in a forfeiture of vested property rights, which is approved by neither law nor equity.

In essence appellants urge that they timely and properly exercised their option to purchase prior to March 1, 1979, and by doing so relieved themselves of any liability for the March rental. They further assert that in any event, appellants were entitled to such rental as the equitable owners of the property effective March 1, 1979. Appellants maintain that once they exercised the option to purchase, the landlord-tenant relationship ceased and a vendor-purchaser relationship arose, and that therefore no rent was due upon March 1, 1979.

They also assert, without conceding that any rent was due, that it was Sanditen's conduct which led them to believe that the closing would be effected on March 1, 1979; that the closing was delayed only because of the conduct of Sanditen and his attorney which prevented a closing on March 1, 1979; and that this relieved them of any responsibility of making the rental payment due March 1, 1979.

1. In answer to Special Issue No. 2 the jury found that plaintiffs either in person or by their attorney, agreed that the purchase and sale of the property in question would be handled by mail rather than in person. In answer to Special Issue No. 3 the jury found that plaintiffs, either in person or by their attorneys, by their acts and conduct led the defendants to believe that the purchase and sale would be considered closed as of March 1, 1979.

The written instrument here involved is dated May 1, 1978, and is entitled "Indenture of Lease." In such agreement, Sanditen, as lessor, leases to appellants as lessee, certain property in Laredo, Texas, with the initial rental being $725.00 a month for the first ten months, after which time the monthly rental will be $1,762.00 commencing on March 1, 1979.

The pertinent provisions of the instrument here involved leading up to this controversy are summarized as follows:

Section 14 of the lease provides for termination of the lease upon failure to pay monthly rentals in accordance with the terms and provisions of the lease.

Section 16 of the lease contains the option to purchase under which appellants are granted an option to purchase the underlying land at any time after the expiration of eight months and before the expiration of twenty-one months from the date of the lease under certain stipulated conditions, which option was exercisable by giving Sanditen written notice; and that thereafter, a contract shall exist between lessor and lessee for the sale and purchase of the real estate.

Section 16(i) of the lease agreement provides as follows:

It is expressly agreed by and between the parties hereto that in the event that Lessee should default, at any time, in the performance of its obligations under this Lease, as a result of which this Lease shall be terminated, then and in such event the option herein contained shall terminate immediately upon the termination of this Lease, and shall be of no further force and effect.

Section 20 of the lease agreement, entitled Merger of Titles, reads as follows:

Notwithstanding anything to the contrary, in the event lessee defaults under any of the terms, covenants and conditions of this Lease *prior to Lessee closing their option* to purchase said land and Lessee fails to cure same within the time allowed under this Lease, if any, then without notice to Lessee at Lessor's option, Lessee's interest in and to the buildings, structures, and improvements situated on or within the demised premises shall cease and be merged with Lessor fee simple title and Lessee shall have no further interest, and/or claim thereto. (emphasis added)

Paragraph 6 of the lease contains the following provision: "All buildings, structures, alteration, additions, and improvements, except trade fixtures, put in at the expense of Lessee or any Sub-Lessee shall become the property of the Lessor and shall remain upon and be surrendered with the premises as a part thereof at the termination of this lease."

Appellants contend that under the undisputed evidence and the jury's answers to Special Issues 2 and 3 they are entitled to judgment as a matter of law ordering Sanditen to specifically perform the parties' contract of sale and purchase. We disagree. We do not regard either Special Issue No. 2 or No. 3 as ultimate or controlling issues. There are other pertinent special issues which are summarized as follows:

The jury answered "We do not" to the following special issues:

Special Issue No. 4.

Do you find that plaintiffs pursued a course of conduct which was calculated to cause the defendants to become or remain in default in the payment of the March 1, 1979, rental installment?

Special Issue No. 6:

Do you find that plaintiffs pursued a course of conduct which misled the defendants into believing that the rental provisions insofar as it covered the March 1, 1979, rental installment would not be insisted upon?

Special Issue No. 14:

Do you find that the failure of the defendants to pay the March 1, 1979, rental was the result of mutual mistake on the part of the parties?

Special Issue No. 15:

Do you find that any delay in closing the purchase and sale after March 1, 1979, was caused in part by the neglect of the plaintiffs?

Special Issue No. 16:

Do you find that any delay in closing the purchase and sale after March 1, 1979, was due solely to the neglect of the plaintiffs?

Special Issue No. 17:

Do you find that on March 1, 1979, the defendants had in all respects complied with the provisions of the option agreement with which they were obligated to comply?

Special Issue No. 20:

Do you find that the plaintiffs refused to comply with the terms of the option agreement and to convey the property in question to the defendants?

Special Issue No. 25:

Do you find that the plaintiffs wilfully delayed the closing of the sale in order to cancel the lease for non-payment of the March 1, 1979, rental?

The jury answered "We do" to the hereinafter set forth special issues:

Special Issue No. 7:

Do you find that the failure of the defendants to pay the March 1, 1979, rental installment was due to willful, culpable and gross neglect on their part?

Special Issue No. 10:

Do you find that the failure of the defendants to pay the March 1, 1979, rental was intentional?

Appellants have no points of error complaining of the factual sufficiency of the evidence to support the jury's findings hereinbefore set forth, nor are there any points of error complaining of the submission of such issues or of their form of submission.

The major thrust of appellants' contentions on this appeal are (1) there was no default in payment of any rent or in the exercise of the option to purchase; (2) forfeitures are not favored in law or in equity and this court should not uphold the forfeiture ordered herein; (3) if there was any default in payment of rent or in the exercise of the option to purchase, it was caused solely by the conduct of Sanditen or his attorneys and the failure to close the contract of sale was not appellants' fault, and

equity should not permit Sanditen to benefit by such conduct to the detriment of appellants; and (4) appellants have spent large sums of money in improving the leased premises, all of which they will lose if the trial court's decision is allowed to stand, resulting in Sanditen realizing a substantial windfall to which he is not entitled.

A major problem confronting appellants is that they willingly entered into a written contract with Sanditen, which contract contains the following unambiguous provisions: (a) a termination of lease provision which provides for termination of the lease upon failure to timely pay the monthly rental payments; (b) a forfeiture clause which provides that if lessee defaults under any of the terms, covenants, and conditions of the lease prior to lessee closing the option to purchase the land involved, lessee's interest in and to the buildings, structures and improvements on the leased premises shall cease and be merged with lessor's fee simple title, and lessee shall have no further interest or claim thereto; (c) a provision that if lessee shall default at any time in the performance of its obligation under the lease as a result of which the lease is terminated, then the option therein contained shall terminate immediately upon the termination of the lease and shall be of no further force and effect; and (d) a provision that all buildings, structures, additions and improvements put in at the expense of lessee shall become the property of the lessor and be surrendered with the premises at the termination of the lease.

It appears from the record that both appellants and appellees are experienced businessmen and there is no evidence of any overreaching or unconscionable conduct of any party in connection with the preparation and execution of the lease. Under the written agreement entered into between Sanditen and appellants, Sanditen clearly contracted for and appellants granted to appellees the right to terminate appellants' interest in the property if appellants defaulted prior to closing their option. It is an undisputed fact that the option to purchase had not been closed by March 1, 1979,

and that on such date a monthly rental of $1,762 had not been paid.

While appellants assert that Sanditen was responsible for the delay in closing, the jury's answers to the special issues submitted in this respect were adverse to appellants. It is clear from such special issues that the jury found appellants to be the defaulting party under the terms of the lease, including the option to purchase provision, and that any delay in closing was not caused by Sanditen.

■ While forfeitures are not favored, they are not illegal. *Home Insurance Co. v. Puckett*, 27 S.W.2d 111 (Tex.Comm'n App. —1930, holding approved). When the parties in unambiguous language write into their agreement a provision for forfeiture, the courts will enforce the provision. *Grindstaff v. Mather*, 186 S.W.2d 364 (Tex. Civ.App.—Amarillo 1945, writ ref'd, want of merit).

■ Under the evidence, the applicable authorities, and the jury's answers to special issues submitted, the trial court did not err in (a) decreeing the lease terminated, (b) refusing to order specific performance of the parties' contract of sale and purchase, and (c) decreeing that appellants take nothing by their suit. The judgment of the trial court as to these holdings is hereby affirmed.

■ By their fourth point of error appellants complain that the trial court erred in failing to award them judgment against Sanditen for reasonable attorney's fees found by the jury. They urge that they are entitled to such attorney's fees as a prevailing party, both as a contractual stipulation and as a matter of law. We find no merit in this point of error. Appellants are not a prevailing party, either in the trial court or in this appeal. The contractual provision relied upon by appellant provides in effect that if one of the parties to the lease breaches any of the terms and the party not in default hires attorneys to protect his rights and prevails, the defaulting party will pay to the other party reasonable attorney's fees. This contractual provision is of no benefit to appellant, either under the jury's answers to special issues or the judgment of the trial court. Appellants' point of error number 4 is overruled.

■ Appellants in one of their points of error, complain that there is no evidence in the record to support the award of $2,500 in attorney's fees to Trang, the intervenor. We agree. While an interpleading party may be awarded attorney's fees, he must prove the reasonableness of such fees. *Lawson v. City of Groves*, 487 S.W.2d 439 (Tex.Civ.App.—Beaumont 1972, no writ). Attorney's fees and the reasonableness thereof is a question of fact which must be supported by the evidence. *Great American Reserve Insurance Co. v Britton*, 406 S.W.2d 901 (Tex.1966); *Martin v. Body*, 533 S.W.2d 461 (Tex.Civ.App.—Corpus Christi, no writ). There is no probative evidence in the record to support the award of $2,500 to Trang nor is there any jury finding as to what a reasonable attorney's fee for Trang would be. This portion of the judgment awarding Trang $2,500 must be reversed.

The trial court ordered that the $2,500 attorney's fees, to which it found Trang entitled, was to be paid from funds deposited in the court's registry by Trang and by appellants, and that the remainder was to go to Sanditen. It appears from the record that both Trang and appellants paid sums of money into the registry of the court. Until the record is further developed by a new trial as to the extent and reasonableness of any attorney's fees to be awarded to Trang, there is no way of determining whether there will be any surplus in the registry of the court, if an award of attorney's fees is made to Trang. Under the circumstances, that portion of the case pertaining to an award of attorney's fees to Trang should be reversed and remanded to the trial court for trial and full development of all pertinent matters.

That portion of the judgment awarding attorney's fees to Trang is hereby severed and remanded to the trial court for a new trial. The judgment in all other things is affirmed.