David W. ROARK et ux., Petitioners,

v.

Dale ALLEN et al., Respondents.

No. C–940.

Supreme Court of Texas.

June 2, 1982.

Rehearing Denied June 30, 1982.

---

John H. Holloway, Houston, for petitioners.

Cantey, Hanger, Gooch, Munn & Collins, Richard L. Griffith and Rod Patterson, Fort Worth, Bailey, Williams, Westfall, Lee &

Fowler, James A. Williams and Kevin J. Keith, Dallas, for respondents.

RAY, Justice.

This is a medical malpractice case arising from the use of forceps in the breech delivery of a child. David W. Roark and his former wife, Sherry L. Roark, individually and as the sole heirs of the estate of their deceased son, Robert Ryan Roark, sued Drs. Dale Allen and J. G. Matthews, the physicians who allegedly injured their son during delivery.[1] On the basis of jury findings of negligence, the trial court rendered judgment that the Roarks recover $10,000 against Drs. Allen and Matthews, jointly and severally. It was also adjudged that the Roarks recover $2,000 from Dr. Matthews, individually. The court of appeals affirmed the judgment as to Dr. Allen, but reversed and rendered a take nothing judgment as to Dr. Matthews. 625 S.W.2d 411. We reverse the court of appeals' judgment as to Dr. Allen and affirm its judgment as to Dr. Matthews.

On February 9, 1976, at about 6:10 p. m., Sherry L. Roark, the pregnant wife of David W. Roark, was admitted into Grand Prairie Community Hospital in Grand Prairie, Texas. She was in active labor. Her physician was Dr. Dale Allen, a general practitioner. At about 8:00 p. m., Dr. Allen ordered Sherry X-rayed. These X-rays revealed that the child was in the frank breech position—i.e., the child was in a scissorlike position with its legs pointing up toward its head. The child's buttocks were at the top of the birth canal. Dr. Allen determined from the X-rays that the child could be delivered vaginally and that a Caesarean section would be unnecessary. As Sherry was not yet sufficiently dilated for birth, Dr. Allen went home for the night. He returned at about 5:00 a. m. the following morning to find Sherry fully dilated.

Beginning at 6:50 a. m., Dr. Allen worked unsuccessfully for about an hour trying to deliver the child. He then called in Dr. J. G. Matthews, an obstetrician, who immediately performed an episiotomy (surgical enlargement of the lower part of the birth canal). Dr. Matthews was then able to deliver the baby's legs, hips, torso and arms. However, the child's head became lodged in the mother's pelvis. In order to aid delivery, Dr. Matthews employed Piper forceps to grasp the child's head. As he was pulling on them, the forceps slipped off the child's head. Dr. Matthews reapplied the forceps and successfully delivered the child, a boy, who was named Robert Ryan Roark.

The infant Roark had an indentation on either side of its head. Dr. Matthews testified he was at first concerned that his use of the forceps might have fractured the child's skull. This fear was allayed when Dr. Roig, a pediatrician, examined the child and found no neurological damage. Drs. Roig, Matthews and Allen, together, concluded that these were soft-tissue indentations which would resolve themselves within in a short time and Dr. Allen so advised the Roarks. The indentations did not, however, resolve themselves and, when the child was about five weeks old, Dr. Roig X-rayed Robert and determined that he suffered from bilateral fractures of the skull. Dr. Roig referred the Roarks to Dr. Morris Sanders, a neurosurgeon, who, on March 18, operated on Robert and successfully elevated the fractures. Robert fully recovered with no neurological impairment.

The Roarks sued Drs. Allen and Matthews, alleging they were negligent in their delivery of the child, in failing to obtain the Roarks' "informed consent" and in failing to refer Robert for surgery.[2] Trial was to a jury, which found the following: (1) Dr. Matthews used the forceps negligently in delivering Robert Roark, which negligence

---

1. Robert Ryan Roark died in a totally unrelated incident when he was about eleven months old.

2. Dr. Matthews argues that the Roarks' petition was insufficient to raise the issue of his negligent delivery of the child. We address this point later in the opinion.

proximately caused the skull fracture; (2) Dr. Allen failed to inform the Roarks of the possibility of a skull fracture, which failure proximately caused injury to Robert Roark; (3) $2,000 would reasonably compensate David Roark for expenses he incurred in the treatment of Robert's fracture and $10,-000 would have reasonably compensated Robert for the pain and mental anguish he suffered because of the fracture; and (4) Dr. Allen and Dr. Matthews were each 50% negligent. On the basis of these findings, the trial court rendered judgment that the Roarks recover $10,000 from Drs. Allen and Matthews, jointly and severally. It was also adjudged that the Roarks recover $2,000 from Dr. Matthews, individually.

The court of appeals affirmed the award against Dr. Allen but reversed the award against Dr. Matthews because the special issue on which he was found negligent had no basis in the Roarks' petition. This Court granted applications for writ of error from both the Roarks and Dr. Allen.

*Dr. Allen's Application for Writ of Error*

Dr. Allen's liability is predicated on an affirmative jury finding to the following Special Issue No. 8:

Do you find from a preponderance of the evidence that Dr. Dale Allen failed to obtain the 'informed consent' of the parents of Robert Ryan Roark concerning the possible injury to the infant's head?

In conjunction with this issue, the trial court submitted the following definition:

By the term 'INFORMED CONSENT', as used in this issue, is meant the furnishing by the physician to the parents of the infant sufficient information about the nature and extent of possible injuries sustained at his birth and the complications associated with such injuries, together with the information as to available medical or surgical means to diagnose such injuries, and the risks or dangers inherent in connection with such injuries or failure to diagnose such injuries, to

permit the parents of the infant to make a knowledgeable and fully informed decision as to accepting or refusing other diagnostic procedures or suggested medical or surgical care or lack of medical or surgical care of fractures of the skull of an infant.

The jury also found that Dr. Allen's failure was the proximate cause of injury to the infant Roark.

■ Dr. Allen first argues that Special Issue No. 8 is an improper application of the doctrine of informed consent. We agree. In *Wilson v. Scott*, 412 S.W.2d 299 (Tex. 1967), this state's fountainhead case in the area of informed consent, we stated that—

[p]hysicians and surgeons have a duty to make a reasonable disclosure to a patient of risks that are incident to medical diagnosis and treatment. This duty is based upon the patient's right to information adequate for him to exercise an informed consent to or refusal of the procedure.

412 S.W.2d 299 at 301. It is apparent from this statement that the doctrine of informed consent applies only to medical procedures which have yet to be performed and that it is inapplicable in a situation such as this, where the patient has already undergone the proposed treatment and been injured. *See also, Jacobs v. Theimer*, 519 S.W.2d 846 (Tex.1975).

■ While Special Issue No. 8 contains the term "informed consent", the issue and the accompanying definition, when read together, inquire into a totally different cause of action—i.e., they inquire whether Dr. Allen failed to inform the Roarks of the possibility that their son's head was injured during birth. The Roarks' response brief indicates they were seeking to establish that Dr. Allen's failure to inform constituted negligence, although the trial court did not submit a special issue to this effect. There were, however, issues concerning causation and damages. Under Tex.R.Civ.Pro. 279, if an issue necessary to sustain a ground of recovery is omitted, without an objection or request, the trial court will be

deemed to have found the issue in such manner as to support its judgment. No one requested a special issue inquiring whether Dr. Allen's failure to inform constituted negligence and no one objected to its omission. The trial court is, therefore, deemed to have found that Dr. Allen breached the applicable standard of care by his failure to inform.

 Dr. Allen argues that there is no evidence to support this deemed finding. We agree. Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman. *See, Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977). Such is the case here; the diagnosis of skull fractures is not within the experience of the ordinary layman. Accordingly, as in most medical malpractice actions, the Roarks had the burden of proving by expert medical testimony what information a reasonable practitioner of the same school and same or similar community under the same or similar circumstances would have disclosed to them. *Wilson v. Scott, supra.*

 In evaluating the Roarks' "no evidence" point, we may consider only the evidence and inferences which tend to support the trial court's deemed finding and must disregard all evidence and inferences to the contrary. *Stodghill v. Texas Employers Insurance Association*, 582 S.W.2d 102, 103, (Tex.1979).

The court of appeals found that Dr. Allen's own testimony established the proper standard of care. The evidence most favorable to the court of appeal's conclusion is Dr. Allen's testimony that a reasonable physician would have advised the Roarks of the possibility of a skull fracture *if he assumed the fracture existed.* We are not convinced that this established the proper standard of care because of the way Dr. Allen qualified his statement. But assuming Dr. Allen's testimony does establish the proper standard of care, we find no evidence of a breach of that standard. Indeed, the evidence is uncontroverted that Dr. Allen assumed a fracture did not exist.

Dr. Allen testified that an X-ray of the child would have revealed the fractures and that X-rays were available in the Grand Prairie Community Hospital. However, both he and Dr. Matthews testified that it is relatively common for a child born with the aid of forceps to have indentations on the side of its head and that these are usually soft tissue indentations which resolve themselves in time. The record also indicates that Dr. Roig, a pediatrician, examined the infant and found no neurological impairment. On this basis, Drs. Roig, Matthews and Allen concluded that the child's skull was not fractured and that an X-ray was unnecessary. Thus, we can find no evidence to support the trial court's deemed finding of negligence; accordingly, we must reverse the court of appeals judgment against Dr. Allen.

*The Roarks' Application for Writ of Error*

The court of appeals held the Roarks' petition insufficient to support the submission of special issues inquiring whether Dr. Matthews was negligent in his use of the forceps. The court indicated the petition was defective because it did not allege that Matthews used the forceps negligently and that such negligence was a proximate cause of the child's injury. The Roarks argue that their petition was sufficient to raise the issue of Matthews' negligent delivery. We agree with the Roarks.

 Dr. Matthews did not specially except to the Roarks' petition. When there are no special exceptions, a petition will be construed liberally in favor of the pleader. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 186 (Tex.1977). Also, "[t]he court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Gulf,*

*Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. *Murray v. O & A Express, Inc.,* 630 S.W.2d 633 (Tex.1982); *Castleberry v. Goolsby Building Corporation,* 611 S.W.2d 665, 666 (Tex.1981); *Stone v. Lawyers Title Insurance Corp., supra;* Tex.R.Civ.Pro. 45 and 47.

 The Roarks alleged that Dr. Matthews delivered the child and, as a result of the delivery, the child sustained a fractured skull; the fractures caused the child intense physical pain and mental anguish and caused the parents to incur additional medical expense.[3] We hold this was sufficient to give Dr. Matthews fair notice that he would have to defend against a claim involving the manner in which he delivered the child. We do not consider it fatal that the Roarks did not use the word "negligent" in connection with the delivery or otherwise specifically indicate that Dr. Matthews failed to exercise ordinary care. This can be inferred both from the petition as a whole and from the following specific language: "As a result of the delivery, or attempts at delivery, by the Defendants,

jointly and severally, the infant sustained bilateral depressed skull fractures." (Emphasis added). The phrase "jointly and severally" usually refers to liability; if two defendants are jointly and severally liable, the plaintiff may sue one or the other or both of them for the entire amount of the damages. *See: Black's Law Dictionary* 972 (4th ed. 1957). Such legal terminology, although used vaguely, was sufficient to alert Dr. Matthews that the Roarks intended to hold him liable for some act connected with his delivery of the child. If Dr. Matthews considered the petition obscure, he should have specially excepted to it and he has waived any defect by his failure to do so. Tex.R.Civ.Pro. 90 and 91.

 Dr. Matthews argues that the Roarks made a judicial admission that his delivery of the child was non-negligent when they stated in their petition: "*[A]ccording to the information furnished to Plaintiffs,* Dr. Matthews effected the delivery of the child without difficulty to the head by use of forceps." (Emphasis added). We disagree. This statement merely indicates that the Roarks were told the delivery went without difficulty. The paragraph following this statement makes clear that all did not go well, that the child's skull was fractured as a result of the delivery.

---

3. The Roarks' petition reads in relevant part: Following this attempt at delivery, Dr. Allen obtained the consultation of Dr. J. G. Matthews, *and according to the information furnished to Plaintiffs, Dr. Matthews effected the delivery of the child without difficulty to the child's head by use of forceps, the time of delivery being recorded in the hospital records as 8:42 a. m. on February 10, 1976.*

*As a result of the delivery, or attempts at delivery, by the Defendants, jointly and severally, the infant sustained bilateral depressed skull fractures, with the left side of the head being more extensively depressed than the right side of the head, and requiring the admission of Robert Ryan Roark to the Children's Medical Center in Dallas, Texas, on March 18, 1976, where the child underwent surgery by Dr. Morris Sanders for the fractures of the skull. As a result of the injuries sustained by the infant, he suffered intense physical pain and mental anguish,* *and the parents were required to spend various sums of money for medical and surgical treatment.*

Plaintiffs further allege that the Defendants were negligent in failing to obtain the parents' informed consent and were negligent in failing to refer the infant for surgery when the Defendants knew, or in the exercise of ordinary care should have known, that the infant had suffered fractures of the skull.

III.

As a direct and proximate cause of the negligence of the Defendants, jointly and severally, the Plaintiffs should recover damages for the injuries sustained by Robert Ryan Roark, Deceased, for physical pain, mental anguish, and physical injuries from the date of his birth to the date of his death, in the sum of $25,000.00 .... (Emphasis added).

The court of appeals, because of its holding that the Roarks' petition was inadequate, found it unnecessary to reach Dr. Matthews' "no evidence" and "insufficient evidence" points. While it would have been better practice for Dr. Matthews to have assigned cross points in this Court, his failure to do so is not jurisdictional; Dr. Matthews is nevertheless entitled to have these points considered. We have the alternatives of (1) examining the points not considered by the court of appeals in order to determine whether any will support affirmance of that court's judgment, or (2) remanding the cause to the court of appeals for it to pass on those points. *McKelvy v. Barber,* 381 S.W.2d 59, 64 (Tex.1964); Hatchell and Calvert, *Some Problems of Supreme Court Review,* 6 St. Mary's L.J. 303, 315–317 (Summer 1974).

Of course, we are without jurisdiction to consider Dr. Matthews' insufficiency points; but we can and do pass on his several points of error which complain there is no evidence to support the trial court's judgment against him. David Roark, who was in the delivery room when young Robert was born, testified that he saw Dr. Matthews apply the forceps over the child's shoulders and lock the forcep handles above the child's body. Dr. Allen testified that it would be improper *and impossible* to apply the forceps from above the child's body. When asked to explain his comment, he stated that the shape of the forceps and the shape of the child's head would make it impossible for the forcep blades to fit over the child's head. He also stated that forceps "... are just not used in that manner." We do not take Dr. Allen's testimony to mean that a doctor, applying forceps from above the child's body, cannot insert the blades into the birth canal—only that he cannot fit them around the child's head as forceps are properly meant to fit. We hold that Dr. Allen's testimony constitutes some evidence of the standard of care to be used in delivering a frank breech birth with the aid of forceps and that David Roark's description of the birth is some evidence of a breach of that standard.

Although we find some evidence that Dr. Matthews breached the proper standard of care, we find no evidence that such breach was the proximate cause of young Robert's injuries. Dr. Matthews testified that, in his opinion, the child's skull was fractured as a result of the forceps' slipping. There is, however, no direct evidence that Dr. Matthews' alleged improper application of the forceps caused them to slip. Also, this area is sufficiently complex that a layman cannot infer, from these facts alone, the cause of the forceps' slipping. Accordingly, we must affirm the court of appeals judgment as to Dr. Matthews.

Because of the above holdings, we find it unnecessary to consider the Roarks' and Dr. Matthews' other points of error.

We reverse the court of appeals' judgment as to Dr. Allen and affirm its take-nothing judgment as to Dr. Matthews. Judgment is here rendered that the Roarks take nothing as against Dr. Allen.