MEMORANDUM OPINION

 

No. 04-10-00330-CV

 

GREATER SAN
ANTONIO TRANSPORTATION COMPANY,

Appellant

 

v.

 

John POLITO,

Appellee

 

From the 288th
Judicial District Court, Bexar County, Texas

Trial Court No. 2008-CI-11863

The Honorable Renée
F. McElhaney, Judge Presiding

 

Opinion by:   Karen Angelini, Justice

 

Sitting:                     Catherine Stone, Chief Justice

                     Karen
Angelini, Justice

                     Marialyn
Barnard, Justice

 

Delivered and
Filed:  July 20, 2011

 

REVERSED AND
RENDERED

 

This appeal arises from a
jury trial in which John Polito was awarded $323,477.32 in damages for injuries
he sustained when a taxi cab driven by John Joseph Carreon collided with the
motorcycle Polito was driving.  The jury found that Greater San Antonio
Transportation Company (“Yellow Cab”) was responsible for thirty percent of the
negligence that caused the collision based on the manner in which the dispatch
equipment was placed inside the taxi cab.  Yellow Cab appeals, contending the
evidence is legally insufficient to establish the applicable standard of care,
a breach of that standard, and the foreseeability element of duty and proximate
cause.  We reverse the trial court’s judgment and render judgment in favor of
Yellow Cab.

Evidence Presented at Trial

Chuck Vostry, an
electronics technician for Yellow Cab, testified that a taxi cab is required by
city ordinance to be equipped with a fare meter and a radio.  Vostry stated
that Yellow Cab also requires its taxi cabs to be equipped with a computer
system used to dispatch its vehicles.  The computer system provides the drivers
with addresses and allows the drivers to bid on calls.  Vostry testified that
the senior management of Yellow Cab decides where the equipment is placed inside
the taxi cab taking into consideration industry standards which include an
option for mounting the radio on the passenger-side floorboard.  The Ground
Transportation Unit of the San Antonio Police Department inspects taxi cabs
every six months for compliance with safety standards.

Carreon, the driver of the taxi cab that collided
with Polito, also described the specialized equipment used in a taxi cab as
including: (1) a computer monitor that gives the drivers calls; (2) a radio
that transmits and receives signals so the computer can give the drivers calls
through a GPS system; and (3) a fare meter.  Carreon stated that the radio has
five preset channels.  Of those five channels, three are for data, and two
enable the driver to talk to a dispatcher.  The driver selects a channel based
on the part of the city in which the taxi cab is being driven, and the driver
changes the channels by pushing buttons on the radio.  The radio is mounted on
the passenger-side floorboard.  The computer monitor is mounted in the middle
of the dashboard in front of a vent.

On the day of the accident, Carreon testified that
the radio in his taxi cab made a loud feedback noise.  As he reached down to
try to hit a button on the radio to stop the noise, he lost control of the
steering wheel and collided with Polito.  Carreon testified that the radio had
made that same noise on only two prior occasions in a three year period. 
Carreon believed the noise resulted from his moving the front passenger seat as
far forward as possible to give his passengers more room.  Carreon believed the
noise was caused when the seat bumped the radio.  Carreon never reported the
noise to Yellow Cab.  Carreon testified that the accident would have been less
likely to occur if the radio had been placed in a location that did not require
him to reach down.

Polito, along with two other witnesses who spoke with
Carreon at the scene of the accident, testified that Carreon stated that he was
distracted by looking down at a computer when the accident occurred.  Carreon
testified that the computer monitor has a screen that displays written messages
and buttons to push to accept or reject a call.  Carreon testified that he was
not receiving a communication on the computer monitor when the accident
occurred, and it was not a factor in the accident.  Steven Tippett, the Texas
Highway Patrol trooper who responded to the accident, testified that Carreon
stated that he briefly looked down before the accident; however, Tippett did
not remember what Carreon said caused him to look down.

Standard of Review

When reviewing a legal sufficiency or “no evidence”
challenge, we determine “whether the evidence at trial would enable reasonable
and fair-minded people to reach the verdict under review.”  City of
Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  We view the evidence in the light favorable to the verdict,
crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not.  Id.  Appellate courts will sustain a legal sufficiency
or “no evidence” challenge when: (a) there is a complete absence of evidence of
a vital fact; (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (c) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (d) the
evidence conclusively establishes the opposite of the vital fact.  Merrell
Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).

One of Yellow Cab’s challenges to the legal
sufficiency of the evidence is a claim that expert testimony was required to
establish the applicable standard of care and its breach.  We review whether
expert testimony is necessary to prove a negligence claim under a de
novo standard.  FFE Transp. Servs.,
Inc. v. Fulgham, 154 S.W.3d 84, 90
(Tex. 2004).

Discussion

At trial, Polito’s claims against Yellow Cab were
based on the placement of the radio, the sound of the radio,[1]
and the placement of the computer monitor.  As is apparent from the above-described
testimony, there was evidence that the accident occurred because Carreon was
distracted by leaning over to turn off the radio noise or by looking down at
the computer screen just prior to the accident.

Yellow Cab argues that because this case involved
specialized equipment and industry standards, Polito was required to prove the
standard of care through expert testimony.  “Expert testimony is necessary when
the alleged negligence is of such a nature as not to be within the experience
of a layman.”  FFE Transp. Servs., Inc., 154 S.W.3d at 90 (quoting Roark v.
Allen, 633 S.W.2d 804, 809 (Tex.
1982)).  “In determining whether expert testimony is necessary to establish
negligence, Texas courts have considered whether the conduct at issue involves
the use of specialized equipment and techniques unfamiliar to the ordinary
person.”  Id. at 91.

The leading case on whether expert testimony is
required to prove a negligence claim is FFE Transp. Servs.,
Inc. v. Fulgham, 154 S.W.3d 84 (Tex.
2004).  That case involved a tractor-trailer accident where a coupler assembly
broke loose and caused the trailer to separate from the tractor and overturn,
resulting in an accident.  Id.
at 86.  The driver of the tractor-trailer was injured and sued FFE alleging
that the trailer was defective because the bolts and plates anchoring the upper
coupler assembly to the trailer were missing or weak or both due to rust and
inadequate torque.  Id. at 87. 
The driver also alleged FFE failed to timely and properly maintain the trailer,
and more specifically, its upper coupler assembly.  Id.  The trial court concluded that expert testimony
was required to establish the applicable standard of care, but no expert
testimony was presented.  Id. 
Accordingly, the trial court granted FFE’s motion for directed verdict.  Id.  The court of appeals reversed, concluding expert
testimony was not necessary because “‘the inspection and detection of loose and
rusty bolts connecting parts of a trailer’ was not a factual inquiry beyond the
experience of the layman.”  Id. 
Reviewing the issue de novo,
the Texas Supreme Court concluded expert testimony was required, reasoning:

           Few
people not involved in the trucking industry are familiar with refrigerated
trailers, the mechanisms for connecting them to tractors, and the frequency and
type of inspection and maintenance they require.  While the ordinary person may
be able to detect whether a visible bolt is loose or rusty, determining when
that looseness or rust is sufficient to create a danger requires specialized
knowledge.  Therefore, the layman does not know what the standard of care is
for the inspection and maintenance of the upper coupler assembly, kingpin, and
base rail of a refrigerated trailer.

           

Id. at 91.

           Similarly, in Simmons v.
Briggs Equip. Trust, 221 S.W.3d 109,
111 (Tex. App.—Houston [1st Dist.] 2006, no pet.), the plaintiff was using a
Trackmobile 95TM Mobile Rail-Car Mover (TrackMobile) to move railcars when a
fire started in the TrackMobile’s engine department, injuring the plaintiff. 
The plaintiff alleged a failure in the TrackMobile’s hydraulic system and hoses
caused the fire.  Id.
at 112.  The plaintiff further alleged that Briggs, which was responsible for
the maintenance and repair of the TrackMobile, failed to inspect and/or repair
the hoses in the TrackMobile prior to the incident, resulting in plaintiff’s
injuries.  Id. at
113.  Briggs argued that expert testimony was required to establish the
standard of care for the inspection and maintenance of hydraulic hoses on the
TrackMobile.  Id. at
114.  Applying the legal standard established in FFE, the Houston court held that expert testimony was
required, reasoning:

           Here,
the record reveals that the maintenance and service of a TrackMobile vehicle
involves specialized equipment and techniques unfamiliar to a lay person.  Few
people not involved in the rail-car industry are familiar with rail-car movers,
the functioning of their engines and other internal parts, or the frequency and
type of inspection and maintenance they require.  A maintenance company’s
practices and procedures and industry standards with respect to the inspection
and maintenance of a TrackMobile or other rail-car mover engine are not matters
within a lay person’s general knowledge.

 

Id. at 114-15 (citations omitted).

           The instant case also involves specialized
equipment unique to taxi cabs.  Both the specialized equipment and the manner
of its use are unfamiliar to a lay person.  Few people not involved in the taxi
industry are familiar with the dispatch equipment, the manner in which the
equipment functions, and, most importantly, the manner in which that equipment
needs to be placed for access by taxi drivers.  A taxi company’s practices and
procedures and the industry standards with respect to the placement of dispatch
equipment in a taxi cab are not matters within a lay person’s general
knowledge.  See id.; see
also Schwartz v. City of San Antonio,
No. 04-05-00132-CV, 2006 WL 285989, at *4 (Tex. App.—San Antonio Feb. 8, 2006,
pet. denied) (concluding that what a power company’s practices and procedures
should be, or what industry standards are, when a circuit breaker within an
electrical distribution is tripped are not within a person’s general
knowledge).

           We note that Polito has not based his
negligence claim on the mere fact that Carreon’s taxi cab was equipped with
dispatch equipment.  In fact, it would seem that by its very nature, a taxi cab
would necessarily have to be equipped with dispatch equipment in order to
operate as a taxi cab.  Instead, Polito’s negligence claim is based on the placement of the equipment.  Based on the evidence presented,
we know that the placement of the dispatch equipment is governed by industry
standards; however, no evidence was presented to establish what those industry
standards are.  Although a lay person may be able to determine
whether something inside a car is a distraction, the standard of care
applicable to the placement of specialized equipment within a taxi cab, which
is necessary for its operation and is governed by industry standards, is not
within a person’s general knowledge.  Accordingly, expert testimony was
necessary to establish that standard of care.[2]

Conclusion

           Because
expert testimony was required to prove Polito’s negligence claim against Yellow
Cab but none was presented, we reverse the trial court’s judgment and render a
take nothing judgment in favor of Yellow Cab.

Karen Angelini, Justice









[1]
On appeal, Polito has abandoned his theory that the sound of the radio caused
the accident.  In his brief, Polito states the radio noise “is irrelevant to
any issue before this Court.”





[2]
Because we hold the evidence is legally insufficient with regard to the
standard of care element of Polito’s negligence claim, we do not address Yellow
Cab’s challenges to the breach and foreseeability elements.