



## MEMORANDUM OPINION

No. 04-10-00330-CV

**GREATER SAN ANTONIO TRANSPORTATION COMPANY**,
Appellant

v.

John **POLITO**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-11863
The Honorable Renée F. McElhaney, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  July 20, 2011

REVERSED AND RENDERED

This appeal arises from a jury trial in which John Polito was awarded $323,477.32 in damages for injuries he sustained when a taxi cab driven by John Joseph Carreon collided with the motorcycle Polito was driving.  The jury found that Greater San Antonio Transportation Company ("Yellow Cab") was responsible for thirty percent of the negligence that caused the collision based on the manner in which the dispatch equipment was placed inside the taxi cab. Yellow Cab appeals, contending the evidence is legally insufficient to establish the applicable

standard of care, a breach of that standard, and the foreseeability element of duty and proximate cause. We reverse the trial court's judgment and render judgment in favor of Yellow Cab.

## EVIDENCE PRESENTED AT TRIAL

Chuck Vostry, an electronics technician for Yellow Cab, testified that a taxi cab is required by city ordinance to be equipped with a fare meter and a radio. Vostry stated that Yellow Cab also requires its taxi cabs to be equipped with a computer system used to dispatch its vehicles. The computer system provides the drivers with addresses and allows the drivers to bid on calls. Vostry testified that the senior management of Yellow Cab decides where the equipment is placed inside the taxi cab taking into consideration industry standards which include an option for mounting the radio on the passenger-side floorboard. The Ground Transportation Unit of the San Antonio Police Department inspects taxi cabs every six months for compliance with safety standards.

Carreon, the driver of the taxi cab that collided with Polito, also described the specialized equipment used in a taxi cab as including: (1) a computer monitor that gives the drivers calls; (2) a radio that transmits and receives signals so the computer can give the drivers calls through a GPS system; and (3) a fare meter. Carreon stated that the radio has five preset channels. Of those five channels, three are for data, and two enable the driver to talk to a dispatcher. The driver selects a channel based on the part of the city in which the taxi cab is being driven, and the driver changes the channels by pushing buttons on the radio. The radio is mounted on the passenger-side floorboard. The computer monitor is mounted in the middle of the dashboard in front of a vent.

On the day of the accident, Carreon testified that the radio in his taxi cab made a loud feedback noise. As he reached down to try to hit a button on the radio to stop the noise, he lost

control of the steering wheel and collided with Polito.  Carreon testified that the radio had made that same noise on only two prior occasions in a three year period.  Carreon believed the noise resulted from his moving the front passenger seat as far forward as possible to give his passengers more room.  Carreon believed the noise was caused when the seat bumped the radio. Carreon never reported the noise to Yellow Cab.  Carreon testified that the accident would have been less likely to occur if the radio had been placed in a location that did not require him to reach down.

Polito, along with two other witnesses who spoke with Carreon at the scene of the accident, testified that Carreon stated that he was distracted by looking down at a computer when the accident occurred.  Carreon testified that the computer monitor has a screen that displays written messages and buttons to push to accept or reject a call.  Carreon testified that he was not receiving a communication on the computer monitor when the accident occurred, and it was not a factor in the accident.  Steven Tippett, the Texas Highway Patrol trooper who responded to the accident, testified that Carreon stated that he briefly looked down before the accident; however, Tippett did not remember what Carreon said caused him to look down.

## STANDARD OF REVIEW

When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Id.*  Appellate courts will sustain a legal sufficiency or "no evidence" challenge when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight

to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

One of Yellow Cab's challenges to the legal sufficiency of the evidence is a claim that expert testimony was required to establish the applicable standard of care and its breach. We review whether expert testimony is necessary to prove a negligence claim under a *de novo* standard. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004).

## DISCUSSION

At trial, Polito's claims against Yellow Cab were based on the placement of the radio, the sound of the radio,[1] and the placement of the computer monitor. As is apparent from the above-described testimony, there was evidence that the accident occurred because Carreon was distracted by leaning over to turn off the radio noise or by looking down at the computer screen just prior to the accident.

Yellow Cab argues that because this case involved specialized equipment and industry standards, Polito was required to prove the standard of care through expert testimony. "Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of a layman." *FFE Transp. Servs., Inc.*, 154 S.W.3d at 90 (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)). "In determining whether expert testimony is necessary to establish negligence, Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *Id*. at 91.

The leading case on whether expert testimony is required to prove a negligence claim is *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84 (Tex. 2004). That case involved a tractor-

---

[1] On appeal, Polito has abandoned his theory that the sound of the radio caused the accident. In his brief, Polito states the radio noise "is irrelevant to any issue before this Court."

trailer accident where a coupler assembly broke loose and caused the trailer to separate from the tractor and overturn, resulting in an accident. *Id*. at 86. The driver of the tractor-trailer was injured and sued FFE alleging that the trailer was defective because the bolts and plates anchoring the upper coupler assembly to the trailer were missing or weak or both due to rust and inadequate torque. *Id*. at 87. The driver also alleged FFE failed to timely and properly maintain the trailer, and more specifically, its upper coupler assembly. *Id*. The trial court concluded that expert testimony was required to establish the applicable standard of care, but no expert testimony was presented. *Id*. Accordingly, the trial court granted FFE's motion for directed verdict. *Id*. The court of appeals reversed, concluding expert testimony was not necessary because "'the inspection and detection of loose and rusty bolts connecting parts of a trailer' was not a factual inquiry beyond the experience of the layman." *Id*. Reviewing the issue *de novo*, the Texas Supreme Court concluded expert testimony was required, reasoning:

> Few people not involved in the trucking industry are familiar with refrigerated trailers, the mechanisms for connecting them to tractors, and the frequency and type of inspection and maintenance they require. While the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge. Therefore, the layman does not know what the standard of care is for the inspection and maintenance of the upper coupler assembly, kingpin, and base rail of a refrigerated trailer.

*Id*. at 91.

Similarly, in *Simmons v. Briggs Equip. Trust*, 221 S.W.3d 109, 111 (Tex. App.—Houston [1st Dist.] 2006, no pet.), the plaintiff was using a Trackmobile 95TM Mobile Rail-Car Mover (TrackMobile) to move railcars when a fire started in the TrackMobile's engine department, injuring the plaintiff. The plaintiff alleged a failure in the TrackMobile's hydraulic system and hoses caused the fire. *Id*. at 112. The plaintiff further alleged that Briggs, which was responsible for the maintenance and repair of the TrackMobile, failed to inspect and/or repair the hoses in the

TrackMobile prior to the incident, resulting in plaintiff's injuries. *Id*. at 113. Briggs argued that expert testimony was required to establish the standard of care for the inspection and maintenance of hydraulic hoses on the TrackMobile. *Id*. at 114. Applying the legal standard established in *FFE*, the Houston court held that expert testimony was required, reasoning:

> Here, the record reveals that the maintenance and service of a TrackMobile vehicle involves specialized equipment and techniques unfamiliar to a lay person. Few people not involved in the rail-car industry are familiar with rail-car movers, the functioning of their engines and other internal parts, or the frequency and type of inspection and maintenance they require. A maintenance company's practices and procedures and industry standards with respect to the inspection and maintenance of a TrackMobile or other rail-car mover engine are not matters within a lay person's general knowledge.

*Id*. at 114-15 (citations omitted).

The instant case also involves specialized equipment unique to taxi cabs. Both the specialized equipment and the manner of its use are unfamiliar to a lay person. Few people not involved in the taxi industry are familiar with the dispatch equipment, the manner in which the equipment functions, and, most importantly, the manner in which that equipment needs to be placed for access by taxi drivers. A taxi company's practices and procedures and the industry standards with respect to the placement of dispatch equipment in a taxi cab are not matters within a lay person's general knowledge. *See id*.; *see also Schwartz v. City of San Antonio*, No. 04-05-00132-CV, 2006 WL 285989, at *4 (Tex. App.—San Antonio Feb. 8, 2006, pet. denied) (concluding that what a power company's practices and procedures should be, or what industry standards are, when a circuit breaker within an electrical distribution is tripped are not within a person's general knowledge).

We note that Polito has not based his negligence claim on the mere fact that Carreon's taxi cab was equipped with dispatch equipment. In fact, it would seem that by its very nature, a taxi cab would necessarily have to be equipped with dispatch equipment in order to operate as a

taxi cab. Instead, Polito's negligence claim is based on the *placement* of the equipment. Based on the evidence presented, we know that the placement of the dispatch equipment is governed by industry standards; however, no evidence was presented to establish what those industry standards are. Although a lay person may be able to determine whether something inside a car is a distraction, the standard of care applicable to the placement of specialized equipment within a taxi cab, which is necessary for its operation and is governed by industry standards, is not within a person's general knowledge. Accordingly, expert testimony was necessary to establish that standard of care.[2]

## CONCLUSION

Because expert testimony was required to prove Polito's negligence claim against Yellow Cab but none was presented, we reverse the trial court's judgment and render a take nothing judgment in favor of Yellow Cab.

Karen Angelini, Justice

---

[2] Because we hold the evidence is legally insufficient with regard to the standard of care element of Polito's negligence claim, we do not address Yellow Cab's challenges to the breach and foreseeability elements.