

# Fourth Court of Appeals
## San Antonio, Texas

## CONCURRING OPINION

No. 04-18-00411-CV

**REPSOL OIL AND GAS USA, LLC** as successor of Talisman Energy USA Inc, Statoil Texas Onshore Properties, LLC, and Statoil Pipelines, LLC, and OGE, LLC,
Appellants

v.

**MATRIX PETROLEUM, LLC**, Matrix Petroleum Holdings LLC, JAR Resources Holdings, L.P., and TMRX Petroleum, LLC,
Appellees

From the 218th Judicial District Court, La Salle County, Texas
Trial Court No. 14-08-00158-CVL
Honorable Russell Wilson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice
Concurring Opinion by: Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: December 27, 2023

I do not reach the decision to reverse a jury verdict lightly. *Cf.* Hardberger, Phil D., *Juries Under Siege*, 30 St. Mary's L.J. 1, 8–9 (1998). Here, however, I must because I cannot escape the conclusion that Talisman lacked fair notice of the missing volume of production claims on which the jury awarded Matrix and OGE nearly $79,000,000. I join the court's opinion and write separately to emphasize my reasons.

Matrix and OGE presented several separate and distinct theories of recovery at trial. One theory concerned how the working interest owners' shares of production should have been measured and allocated at the CDP. Talisman used a volumetric allocation methodology; Matrix and OGE argued a flash allocation methodology was required. There is no question that Matrix and OGE provided fair notice of this "methodology" claim in their pleadings. To support its methodology claim, Matrix relied on the report of its expert, David Reeves, and OGE relied on that evidence as well. In the report Matrix provided before Reeves's second deposition, Reeves concluded that Talisman owed the Matrix parties $663,626 on this methodology claim. In that deposition, Reeves affirmed that "there are no other claims" in addition to Matrix's claim for $663,626.

At trial, however, Matrix raised—and OGE parroted—a separate claim that had nothing to do with the dispute about whether a volumetric allocation methodology or a flash allocation methodology was more appropriate. Instead, in this distinct "missing volumes of production" claim, Matrix compared the volumes of production Talisman reported to the Texas Railroad Commission to the volumes of production Talisman reported to the working interest owners, and concluded that the difference, after appropriate deductions, was $67,591,369 for Matrix and $11,265,228 for OGE. The record establishes that Matrix and OGE developed this theory after Reeves's second—and final—deposition. As the court's opinion describes, after that deposition, neither Matrix nor OGE amended their pleadings in any meaningful way.

I have scoured Matrix's and OGE's live pleadings and, because no special exceptions were filed, construed them liberally in favor of the pleader, as the fair notice pleadings standard requires me to do. *See The Huff Energy Fund, L.P. v. Longview Energy Co.*, 482 S.W.3d 184, 195 (Tex. App.—San Antonio 2015) (en banc), *aff'd*, 533 S.W.3d 866 (Tex. 2017); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). I have endeavored to reasonably infer a cause of action from the

allegations Matrix and OGE specifically stated. *See Huff Energy*, 482 S.W.3d at 195. And I am left with no choice but to conclude that an opposing attorney of reasonable competence could not have ascertained the nature of Matrix and OGE's missing volumes of production claim from these pleadings. Even with the benefit of time to scour the pleadings and lengthy record, I simply cannot—from pleadings that asserted a $663,626 methodology claim—find support for missing volumes of production claims of nearly $79,000,000.

For those reasons, I join the court's conclusion that the judgment awarding damages on Matrix and OGE's missing volumes of production claims must be reversed.

Beth Watkins, Justice