**COMMERCIAL STANDARD FIRE AND MARINE COMPANY, Appellant,**

v.

**Annice Lee THORNTON, Individually and as guardian and next friend of Glenda Rae Thornton and Sally Reneé Thornton, Appellees.**

No. 8362.

Court of Civil Appeals of Texas, Texarkana.

July 27, 1976.

Rehearing Denied Aug. 24, 1976.

Victor F. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellant.

Charles E. Thompson, Lovelace & Thompson, Inc., Atlanta, Buck Florence, Florence & Florence, Hughes Springs, for appellees.

CHADICK, Chief Justice.

This is a workmen's compensation case. After jury verdict, the trial judge awarded death benefits authorized by law as compensation to the wife and children of a deceased workman. The trial court judgment is affirmed.

One special issue was submitted for jury consideration. The jury found that the decedent, Johnny Ray Thornton, sustained an accidental injury February 28, 1974, in the course of his employment, which was a producing cause of death. Causation is the appeal problem. Appellant insurance company grounds reversible error on, first, no evidence that Mr. Thornton sustained an accidental injury originating in the course and scope of his employment on February 28, 1974; alternatively, that such verdict is contrary to the great weight and preponderance of the evidence. And, second, no evidence that the alleged accidental injury was a producing cause of Mr. Thornton's death; alternatively, that such verdict is contrary to the great weight and preponderance of the evidence. The parties agree that a heart attack or disorder induced by a strain or exertion in the course and scope of employment is an accidental injury to the physical structure of the body and compensable under the workmen compensation laws. And further, that, when a claimant can causally connect injury and death of such employee with strain or strenuous exertion, a compensable injury is proven.

Mr. Johnny Ray Thornton, an employee of D & H Trucking, Inc., was stricken by a physical disorder on February 28, 1974, and died on May 30, 1974. The plaintiffs' pleadings alleged Mr. Thornton suffered a heart attack, or, alternatively, aggravation of a pre-existing bodily infirmity, brought about by "lack of sleep and strenuous labor, strain and over-exertion" endured in loading his truck.

Mr. Thornton was scheduled to pick up a load of oil well pipe at the T & N Warehouse near Lone Star, Texas, at 2:00 a. m. o'clock on February 28, 1974. At 6:00 a. m. o'clock the same morning he was seen by the dispatcher at D & H Trucking Terminal with his truck loaded with pipe and the pipe properly chained down. Approximately an hour later Mr. Thornton parked his truck at Hazel's Truck Stop in Linden, Texas. At that time he appeared pale and to be in pain and lay down in a booth in the restaurant section. He told the truck stop operator he thought he was having a heart attack. A telephone call brought his wife, who moved him to Tyler, Texas.

At Tyler Mr. Thornton was admitted to Glenwood Hospital and Clinic and treated throughout his fourteen (14) day confinement there by Dr. James Wood. After discharge from the hospital, this medical practitioner continued to see him at two-week intervals and after six weeks' treatment in which satisfactory improvement did not occur recommended and arranged for Mr. Thornton to enter the University of Texas' John Sealy Hospital at Galveston for more thorough testing and cardiac evaluation. Mr. Thornton's death occurred before the examination was "worked up."

Dr. Wood testified that on initial examination a *myocardial infarction* was suspected. Though commonly called heart attack, he explained the term as a condition usually caused by a blood clot in a blood vessel supplying a portion of the heart muscle, the clot causing the muscle to die for lack of a blood supply. The condition may be caused by physical exertion. A muscle thus affected has a zone or a halo about it showing signs of injury which is termed an *ischemia*.

This condition is revealed by electrocardiographic examination. However, Dr. Wood, after test procedures, diagnosed Mr. Thornton's condition as *acute post viral myocarditis* at the time Mr. Thornton was discharged from the clinic. This last medical term means a virus infection of the heart muscles, a disease of the heart. It is not caused by physical exertion; but it may weaken heart muscles to the extent that exertion may overtax the heart and cause injury. Diagnosis of post viral myocarditis was influenced by Mr. Thornton's medical history of having had an acute upper viral respiratory infection six or seven weeks before the time of examination and failure of usual tests to clearly show myocardial infarction.

At the time of trial, Dr. Wood testified, or so his testimony may be construed, that in medical probability Mr. Thornton's death was produced by exertion causing a myocardial infraction and by exertion overtaxing Mr. Thornton's myocarditis depleted cardiac reserve. In each instance, he testified physical exertion expended in tying down and securing the truck's load of pipe in medical probability induced the mentioned conditions and was a producing cause of death. The appellant urges that such conclusion bases an inference upon an inference and is impermissible.

No witness testified to seeing Mr. Thornton perform the tie-down operation. However, evidence was introduced to show loading procedures at the pipe warehouse and the responsibilities of each truck driver during the loading operation. The driver was required to prepare for the pipe cargo by placing 4″ × 4″ × 8′ timbers on the bed of the truck trailer and to set stakes along the edge of the bed to help contain the load. Employees of the warehouse utilized machinery to load the pipe on the truck. After loading, the truck driver was required to place in position twenty to twenty-five foot lengths of chain weighing fifty to sixty pounds each over the pipe load and secure the ends to the side of the trailer bed. The chains were usually positioned by fastening one end to the bed and throwing the chain over and across the pipe for fastening on the opposite side. The chains were tightened on the loads by use of a "boomer," a device that afforded leverage to take up slack in the chain. Operation of the boomer required the driver to use his muscular strength as well as apply bodily weight in tightening the chains. The loading and tying down procedure was standard and used every time a truck was loaded. No driver was permitted to move his truck from the loading yard without having secured the load. The driver was required to certify in writing that the load had been secured before the truck left the warehouse yard. There is no evidence of Mr. Thornton having an assistant or helper in the performance of his duties.

This is not a situation where the jury was required, as in *O'Dell v. Home Indemnity Company,* 449 S.W.2d 485 (Tex.Civ.App. Amarillo 1970, writ ref'd n. r. e.) and *Bean v. Hardware Mutual Casualty Company,* 349 S.W.2d 284 (Tex.Civ.App. Beaumont 1961, writ ref'd n. r. e.), to infer a fact and then draw from the inferred fact additional inferences of fact. To have probative value inferences must be drawn from direct evidence. *Texas Sling Company v. Emanuel,* 431 S.W.2d 538 (Tex.1968). There is direct evidence that Mr. Thornton's truck was loaded and the load chained down and secured at about 6:00 o'clock in the morning, approximately an hour before he was stricken. From this direct evidence and evidence of the loading procedure, it may be inferred that Mr. Thornton underwent strenuous physical exertion in securing his load of pipe a short time before he was stricken. Also, there is direct medical testimony that Mr. Thornton suffered a heart attack or an overtaxed cardiac reserve, both of which may be caused by strenuous exertion. In summary, legitimate evidence establishes these facts: (1) While in apparent good health Mr. Thornton engaged in strenuous exertion in the performance of his duties as a truck driver; (2) closely following this exertion he was stricken by physical disablement; (3) Mr. Thornton's disablement was diagnosed as heart attack or overtaxed cardiac reserve, both of which may be caused by strenuous exertion.

In *Insurance Company of North America v. Kneten,* 440 S.W.2d 52 (Tex.1969), the facts showed that following exertion there was an onset of a heart attack, the attack followed an occurrence sufficient to adversely affect a defective heart. It was held that a jury might reason that the occurrence on the job was probably a cause of the attack and resulting disability. See also *Baird v. Texas Employer's Insurance Association,* 495 S.W.2d 207 (Tex.1973); *Standard Fire Insurance Company v. Sullivan,* 448 S.W.2d 256 (Tex.Civ.App. Amarillo 1969, writ ref'd n. r. e.); and *Midwestern Insurance Company v. Wagner,* 370 S.W.2d 779 (Tex.Civ.App. Eastland 1963, writ ref'd n. r. e.); *Carter v. Travelers Insurance Company,* 132 Tex. 288, 120 S.W.2d 581 (1938).

The last cited cases are not factually parallel with this case. In each of those cases strenuous exertion was proven by direct evidence rather than by inference as in this case. The question becomes whether or not the jury was competent to determine from the enumerated facts and common experience and knowledge that Mr. Thornton was injured and that the injury was the cause of Mr. Thornton's death. It is concluded that the jury might do so; that the reasoning of *Insurance Company of North America v. Kneten,* supra, is applicable. The jury was authorized to infer that Mr. Thornton engaged in strenuous exertion in the loading operation and along with that fact considered the medical finding that he suffered a heart attack or overtaxed cardiac reserve shortly thereafter and that such conditions may be caused by strenuous exertion. This, together with the closely connected series of events, even without testimony of medical probability, as certainly shows the probable cause of injury and death as the nature of the case permits. Appellant's points of error are overruled. There is evidence to support the jury verdict; and the evidence as a whole does not overwhelmingly preponderate against the verdict.

Numerous propositions of law were advanced by both parties but there is no material disagreement upon the law except in its application as herein discussed. The judgment of the trial court is affirmed.