Mary E. STODGHILL et al., Petitioners,

v.

TEXAS EMPLOYERS INSURANCE
ASSOCIATION, Respondent.

No. B–7987.

Supreme Court of Texas.

May 23, 1979.

Norma Venso, Odessa, for petitioners.

Shafer, Gilliland, Davis, Bunton and
McCollum, Connell Ashley and Tryon D.
Lewis, Odessa, for respondents.

SPEARS, Justice.

Petitioner Mary Stodghill and her three children were awarded a judgment against Texas Employers Insurance Association (TEIA) for death benefits under the Worker's Compensation Act pursuant to a favorable jury verdict. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that there was no evidence to support the jury's answer that an accidental fall injuring Thomas Stodghill was a producing cause of his death from a myocardial infarction forty-seven days later. 570 S.W.2d 398. We reverse the judgment of the Court of Civil Appeals and remand the case for a new trial.

■ In determining whether there is "no evidence" to support the finding of the jury as to the existence of producing cause, we must consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Even though evidence was presented at the trial that no causal connection existed between Stodghill's injury and his death, that evidence may not be considered in passing on the "no evidence" point. We thus review that evidence that is favorable to the finding of the jury.

On April 26, 1974, Thomas Stodghill was injured when he fell fifteen feet to the ground from a drilling rig on which he was working. He sustained a fractured right arm at the wrist, an acute lumbosacral strain, and a bruise and contusion of the right hip and the right elbow. Stodghill, 49 years old, was admitted to the hospital by Dr. Edwin E. Franks. His temperature was normal, pulse was 90, respiration was 20, and his blood pressure was 188/92. Dr. Franks noted on the hospital summary sheet that Stodghill had "essential hypertension" and defined the term as a history of high blood pressure. Stodghill was in the hospital for five days, and on the last day, Dr. Franks started Stodghill on blood pressure medication. On his release from the hospital, his blood pressure was 140/92. In the weeks following his release, Stodghill recorded readings of 140/80, 160/100, and 150/90, the upper limits of normal for him being 140/90. On May 7th, the blood pressure medicine was increased from one to two capsules a day. Stodghill never returned to work after his injury. On June 12th, he died at home of a myocardial infarction.

Petitioner Mary Stodghill, the widow, testified that during the time between her husband's injury and his death, he was in pain, he couldn't eat well, he would "bloat up" in his stomach, face and neck, and that "he complained of a lot of indigestion."

On cross-examination, Dr. Franks admitted that in the case of a patient with hypertension, "stress can aggravate or accelerate or excite that condition of hypertension," and that the accident that Stodghill had on April 24th "was obviously a great stress on him." Dr. Franks further conceded that if a person has hypertension, that stress "can" kill him, and that stress "can" aggravate existing hypertension "to the point of causing heart failure."

Dr. Diego Pasos was called to testify by the plaintiffs. Educated in Cuba, he interned at the University of Puerto Rico, and had one year of residence in general surgery after coming to West Texas. After practicing 18 months in Crane, Texas, he moved to Odessa, where he had been in practice for 7 months at the time of trial.

Dr. Pasos never examined the deceased Stodghill, but based his testimony on his study of Stodghill's hospital records and a review of some medical books. He had some difficulty with the English language during his testimony, but despite that, seemed from the record to have understood and to have been understood. After summarizing the background and facts concerning the accident and the injuries sustained, Stodghill's attorney asked Dr. Pasos if "there was any doubt in your mind but that this man received a very serious injury?". His answer was:

"A. These injuries seem like they are going to be very serious, but the fact that this man, of the records showed that he had been *suffering from essential hypertension, body injury could aggravate the progress, and trigger final complication to the hypertension.*" (Emphasis supplied.)

Further questions and answers of Dr. Pasos included:

"Q. Now, I want to talk to you about that. I am going to ask you to assume with me, doctor, certain things to be true. Assume that after the period in the hospital that you have read about, as shown in Plaintiff's Exhibit 2; assumed that he was at home, and that from time to time he would complain of indigestion, that he would, from time to time, swell or get puffed or bloated as his family had not seen him do before; that he was worried about going back to work, being able to go back to work, and finally on the 12th of June, he complained of indigestion and shortly thereafter had to be taken to the hospital where he was pronounced dead, and then assume that Plaintiff's Exhibit No. 1, shows what happened at the hospital—

"A. Uh huh.

"Q. Now assume all of those things to be true. Assume that is what happened to him. Now, if that was the course of his treatment, and if he had the hypertension and had the kind of injury that he received on April 26, is there any question in your mind but what the injury triggered or aggravated the hypertension?

*   *   *   *   *   *

"Q. *Do you have any doubt but what the injury triggered or aggravated the hypertension?*

"A. *Yes, it did. . . .* A patient with essential hypertension have been shown in all of these books, and all of those medical magazines that have been brought to the late scene of all of the hypertension, myocardial infarction and trauma and everything, they come together and they have agreed, most of them, that *the stress on the bodily injury aggravates the arterial hypertension. Okay?*

"Q. *Is this the kind of injury, that this man received, that would create physical and mental stress?*

"A. *Possible. It is possible.*

"Q. *You say possible. Do you mean probable?*

"A. *Probable.*

*   *   *   *   *   *

"Q. Now, there are any number of medical books that teach the same thing you are saying, aren't they?

"A. Yes, a lot of books.

"Q. Based upon what happened to this man, and how quickly he died, and the fact that he had the hypertension before he was injured, do you have any doubt in your mind, medically, but what the injury hastened his death?

*   *   *   *   *   *

"Q. If you assume the things that show in the record, and that I have asked you to assume about his history, is there any question in your mind but what the injury that he got in April hastened his death?

"A. I have a strong belief that a man that has been injured, a man of this age, 49 years old with a previous history of arterial hypertension, and had been involved in an accident, *any kind of accident which produced a bodily injury, will trigger any complication in hypertension, and basis—and the cause of death or death.* The same thing that could be if a heart failure, could be renal failure, a blood clot, myocardial infarction; anything could be the fault of it, but the main thing here, the man was injured, and *that injury could produce probably some kind of shortening of the life span.*" (Emphasis supplied.)

■ Where expert testimony is relied upon to establish causation in a worker's compensation case, expert medical testimony can enable a plaintiff's case to go to the jury if there is testimony of a "reasonable probability" of a causal connection between

the act and the present injury. *Parker v. Employers Mutual Liability Insurance Company of Wisconsin*, 440 S.W.2d 43 (Tex. 1969). The medical expert need not use the exact magic words "reasonable medical probability," but the testimony is sufficient if the circumstances show that this is the substance of what the expert is saying. *Lucas v. Hartford Insurance & Indemnity Company*, 552 S.W.2d 796 (Tex.1977); *Insurance Company of North America v. Kneten*, 440 S.W.2d 52 (Tex.1969); *Otis Elevator Company v. Wood*, 436 S.W.2d 324 (Tex. 1968).

 The substance of the testimony of Dr. Pasos was that it was probable that the stress of the injuries resulting from Stodghill's fall, when superimposed upon the existing arterial hypertension, was a producing cause of Stodghill's death. This testimony, though strongly rebutted by other testimony and circumstances, constitutes some direct evidence of probative force of the causal connection between the injury and the death. *Lucas v. Hartford Ins. & Indemnity Company, supra; Otis Elevator Company v. Wood, supra.*

This case is distinguishable from *Insurance Company of North America v. Myers*, 411 S.W.2d 710 (Tex.1966); and *Parker v. Employers Mutual Liability Insurance Company of Wisconsin, supra.* In those cases we held that the medical testimony presented in support of causation amounted to no more than establishing the *possibility* of a connection which was not equivalent to testimony implicit with probability. This is not a case where the causal connection must be inferred by the jury from their general experience and common sense as in *Commercial Standard Fire and Marine Company v. Thornton*, 540 S.W.2d 521 (Tex.Civ.App. —Texarkana 1976, writ ref'd n. r. e.), nor is it one where circumstantial evidence was needed in order to establish that it was an on-the-job accidental injury that was the cause of a fatal heart attack as in *Baird v. Texas Employers' Insurance Association*, 495 S.W.2d 207 (Tex.1973). Here, there was direct medical testimony of a probable causal relationship between an injury that with-

out dispute happened and a death that without dispute followed. We therefore hold that the Court of Civil Appeals erred in concluding that there was no evidence that Stodghill's injury was a producing cause of his death.

 The usual disposition of a case in which a "no evidence" holding is reversed is to remand the case to the Court of Civil Appeals for consideration of the factual insufficiency points. *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex.1971). During oral argument, petitioners expressly waived their right to have those points considered by the Court of Civil Appeals, and asked us to remand the cause to the trial court for a new trial.

Accordingly, the judgment of the Court of Civil Appeals is reversed and the cause is remanded to the trial court for a new trial.