The CHARTER OAK FIRE INSURANCE COMPANY, Appellant,

v.

Mary Louise MORALES, et al., Appellees.

No. 08-86-00303-CV.

Court of Appeals of Texas, El Paso.

May 6, 1987.

Rehearing Denied July 1, 1987.

Vance Wittie, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for appellant.

Steven L. Clack, Andrews, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

Appellant, The Charter Oak Fire Insurance Company, appeals from the award of death benefits under the Texas Workers' Compensation Act. We reverse and remand.

Jose Leon Morales, referred to as Joe Morales, was employed by Southern Union Gas Company. On May 22, 1984, while driving a company vehicle, he ran off the roadway striking a fence post. He suffered a bruised head, chest and stomach. The autopsy also indicated a fractured rib. He was taken to the emergency room of the hospital in Crane, Texas, where he was treated and released. At home that night, his condition worsened and he was admitted to the hospital. He died during the early morning hours of May 23, 1984.

In Point of Error No. One, Appellant complains that there was no evidence to support the jury's finding that the injury suffered by Joe Morales was a producing cause of his death.

We therefore must consider only the evidence and inferences that tend to support the jury's finding and disregard all evi-

dence and inferences to the contrary in determining a no evidence point. *Stodghill v. Texas Employers Insurance Association,* 582 S.W.2d 102 (Tex.1979); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Therefore, only the evidence favorable to the finding of the jury that the injury was a producing cause of Joe Morales' death will be considered in determining the no evidence point. *U.S. Fire Insurance Company v. Rearden,* 695 S.W.2d 758 (Tex. App.—El Paso 1985, no writ).

Appellee, the surviving widow, on behalf of herself and son, Roy Leonard Morales, sued for death benefits under the Texas Workers' Compensation Act. Tex.Rev.Civ. Stat.Ann. art. 8306 (Vernon 1987). Appellant refused to pay death benefits, contending that Joe Morales died of a brain hemorrhage and that his death was not job related. It further contends that at the time of the vehicle accident of May 22, 1984, the deceased was intoxicated and therefore was not in the course and scope of his employment.

The jury unanimously found that Joe Morales received an injury on or about May 22, 1984, while in the course and scope of his employment, and that the injury was a producing cause of death.

The evidence shows that Joe Morales worked for Southern Union Gas Company as a serviceman for over twenty-nine years. The job of a serviceman requires checking on gas leaks, working on appliances, and changing house and commercial meters. It requires manual labor with considerable bending and stooping. For several months before his death on May 23, 1984, he had been doing the work of two servicemen because his co-worker, Robert Velasquez, had been off work due to illness. It also meant being on twenty-four-hour call during that time. On May 21, 1984, Robert Velasquez was called to assist Joe Morales in breaking loose a house meter. While there, he witnessed Joe Morales' wrench slip, causing Joe Morales to hit his head on a metal cross T clothesline pole. The blow to the head was so hard that it caused tears to come to Joe Morales' eyes and he looked

as though he would faint. Robert Velasquez finished the job while Joe Morales sat in the pickup truck. Shortly thereafter, Joe Morales complained of a headache.

The next morning, on May 22, 1984, after reporting for work, Robert Velasquez noticed that Joe Morales was not acting normal, as he was unusually quiet. The same morning of May 22, 1984, at approximately 11:00 a.m., Joe Morales was at the home of Emma Ramon to turn on the gas and check the gas stove. He was sweating a lot and seemed a little disorientated. Emma Roman was so worried about him that at noon when her husband came home, they went outside to ask Joe Morales if he was all right. He answered "yes," but watching him from inside the house, they noticed that he kind of staggered to his truck. Without objection, the witness, Emma Ramon, testified she had worked in hospitals as a nurse's aide and was personally aware that stroke victims show the same symptoms she had observed in Joe Morales, such as loss of balance, slurred speech and disorientation. Upon observing Joe Morales, she was so aware that something was wrong that she almost called an ambulance. She was close enough to him to know he had no odor of alcohol and that something else was wrong with Joe Morales.

That same afternoon of May 22, 1984, about 3:20 p.m., Robert Velasquez heard someone call on the radio, but he could not understand the mumbling. He was then advised to go to an accident scene, and upon arrival found Joe Morales' truck off the highway. He observed Joe Morales and testified he had a bump on his head and that he looked like he was hurting. A Department of Public Safety officer later testified that Joe Morales told him that he had veered off the highway to avoid collision with an oncoming truck. Joe Morales was taken to the emergency room. His wife observed him there and saw that he had a cut on his forehead, he had bumped his head and was disorientated. The doctor treated and then released him. He was placed under arrest by a Department of Public Safety officer for driving while in-

toxicated, but was released; at trial, the officer testified he realized something was critically wrong with Joe Morales other than alcohol. Joe Morales was taken home, but later that evening of May 22, 1984, he was placed in the hospital and then died in the early morning hours of May 23, 1984.

Dr. Bright, a pathologist who did the autopsy on Joe Morales, testified that the cause of death was a brain hemorrhage (or stroke). He said Joe Morales had cirrhosis of the liver and that in his opinion the death was not work related.

However, Dr. Bright testified that it was not uncommon for an injury appearing small and insignificant to in fact trigger consequences such as you would find with the deceased. His testimony was that it was not uncommon in patients like Joe Morales for even minor episodes of trauma to cause brain hemorrhage. Dr. Bright, however, was of the firm opinion that the hemorrhage was there several days before the accident and that the hemorrhage was not related to the employment. The doctor also testified he did not know with a medical certainty what event triggered the cerebral hemorrhage that led to Joe Morales' death.

■ Upon reviewing the doctor's testimony, it is found that the doctor only based his opinion on the vehicle accident of May 22, 1984. The jury was certainly entitled to weigh his testimony, but also the other facts in the case. Point of Error No. One is overruled.

Point of Error No. Two claims the trial court erred in rendering judgment for Appellees because there was insufficient evidence to support the jury's finding that the injury suffered by Joe Morales was a producing cause of his death.

We now must consider all the evidence in the case, both in support of and contrary to the finding, to determine if the challenged finding is so against the greater weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

■ Joe Morales' preexisting condition of cirrhosis of the liver and generalized coagulopathy came into evidence only after his death and by the testimony of the pathologist, Dr. Bright. At various times during his testimony, he readily admitted that minor insignificant episodes of trauma could cause cranial hemorrhage in people like Joe Morales. Yet, in examining Dr. Bright's testimony as a whole, he refused to admit that Joe Morales' death was work related. It is not a question in this case of conflicting medical opinions by different doctors. In this particular case, there is only one doctor that testified, the pathologist, Dr. Bright, who places the beginning of the hemorrhage at anytime from several days to six days prior to death. He therefore ends up testifying that the automobile accident could not have brought about Mr. Morales' death. We have no testimony in the record from the deceased's employer or any other witness of Joe Morales' illness, other than Dr. Bright's conclusion as a result of the autopsy. There is no evidence one way or another in regard to absenteeism on the job. To sustain the jury verdict, we would have to find that the circumstantial evidence showed that it was an on-the-job accidental injury that caused the fatal brain hemorrhage. Dr. Bright was never asked his opinion concerning the blow to the head on the clothesline pole on May 21, 1984. He was asked whether or not the evidence of trauma over the eye, or any other evidence of external trauma that may have been found, would have been a producing cause of Mr. Morales' death. He answered this question by stating that the discoloration over the eye was unrelated to any bleeding within the brain and, therefore, not related to the cause of death. In other words, Dr. Bright never answered the question as to whether or not any other trauma, such as the blow on the clothesline pole, could have been a producing cause of Mr. Morales' death. In *Texas Employers' Insurance Association v. Thompson*, 610 S.W.2d 208 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), and *Transport Insurance Company v. Campbell*, 582 S.W.2d 173 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), the in-

jured parties were alive and testified at trial and denied some of the facts that the medical experts relied upon. It then became up to the jury to resolve the difference. In this case, this Court is called upon to decide whether there is sufficient evidence to connect Joe Morales' death to an event that happened on the job. The widow's testimony raised some evidence of change of attitude and conduct by Joe Morales prior to the clothesline pole incident. We have an incident involving a clothesline pole and an incident involving an automobile wreck which occurred on the job. Appellees have failed to present sufficient evidence in the trial to support the jury's finding that the injury suffered by Joe Morales was suffered on the job and was a producing cause of his death. Point of Error No. Two is sustained.

Point of Error No. Three complains that the trial court erred in disallowing Appellant to introduce the deposition upon written interrogatories of Elena Morales.

Appellant brought Elena Morales into the lawsuit and claimed she was the first common-law wife of the deceased, Joe Morales. Elena Morales and son, Gilbert Morales, duly answered by and through an attorney. Appellees filed a motion to strike Elena Morales from the lawsuit. At the hearing, the court noted that Elena Morales, although duly notified, failed to appear; therefore, the court granted Appellees' motion to strike her pleadings. Apparently through inadvertence, Gilbert Morales, the son of Elena Morales and the deceased, remained in the lawsuit, but the judgment in the case makes no mention of him.

■ We find no error in the court's striking Elena Morales from the lawsuit when she totally failed to appear for a hearing, thereby waiving her claim to any type of survivor benefits. We find no error, except to note that the judgment issued by the trial court did not dispose of the deceased's child, Gilbert Morales. In view of our disposition of the case, we assume that the interest of Gilbert Morales, son of the deceased, will be properly disposed of on a

retrial. Point of Error No. Three is overruled.

■ Point of Error No. Four complains that the trial court erred in excluding the results of an intoxilyzer test performed on the deceased by the D.P.S. trooper. We see no error in the trial court's excluding the result of the intoxilyzer test since the D.P.S. trooper did testify he did not believe the accident was primarily caused by alcohol and that there was something critically wrong with the man other than alcohol related. Point of Error No. Four is overruled.

We reverse the judgment of the trial court and remand the case for a new trial.