# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00372-CV

### Donna Schooley, Individually and on Behalf of the Estate of Clifford Schooley; and John Gabriel Schooley and Erika Nicole Schooley, Appellants

#### v.

### Karman Weatherby, M.D., Appellee

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-06-1599-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

In this appeal, we must decide whether the trial court properly dismissed a health care liability claim based on the claimants' failure to serve an adequate expert report in compliance with chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (*l*) (West Supp. 2008). Donna Schooley, individually and on behalf of the Estate of Clifford Schooley, John Gabriel Schooley, and Ericka Nicole Schooley contend that the trial court abused its discretion by dismissing their suit against Karman Weatherby, M.D., because their survival claim was adequately pled and because their wrongful-death claim was supported by expert reports that provided a fair summary of the experts' opinions about causation. *See id.* § 74.351(*l*), (r)(6).

Because we conclude that the Schooleys' wrongful-death claim was not supported by an expert report that provided a fair summary of the expert's opinion about causation,

the trial court's order is affirmed in part. However, review of the record demonstrates that the Schooleys' pleadings support a survival claim and that the survival claim was not addressed by Dr. Weatherby's motion to dismiss. Because we conclude that the order dismissing the Schooleys' suit granted greater relief than requested by Dr. Weatherby's motion and was an abuse of discretion, the trial court's order is reversed in part, and this cause is remanded to the trial court for further proceedings.

## BACKGROUND

After being diagnosed with colorectal cancer, Mr. Schooley was scheduled for surgery[1] at San Angelo Community Hospital with Dr. Weatherby. Mr. Schooley's preoperative CT scan suggested a potential liver metastasis, but it was not confirmed on later CT scans. During the surgery on September 27, 2004, Dr. Weatherby nicked Mr. Schooley's spleen, causing bleeding that Dr. Weatherby treated with cauterization of the wound and placement of a drain along the injury site to monitor the bleeding postoperatively. Mr. Schooley's internal bleeding continued postoperatively, and daily laboratory tests revealed his decreasing hemoglobin and hematocrit levels. Five days after surgery, Mr. Schooley passed out and fell from his hospital bed. His wife caught him, eased him to the floor, and called for nursing assistance. Mr. Schooley's bleeding from the drain increased. Two

---

[1] The surgery was a "low anterior resection of the colon and rectum with primary anastomosis."

2

days later, Dr. Weatherby ordered a CT scan and performed exploratory surgery on Mr. Schooley, who was found to have a large internal blood clot and ruptured anastomosis,[2] resulting in sepsis.[3]

Dr. Weatherby performed four additional surgeries to control Mr. Schooley's sepsis. Mr. Schooley remained hospitalized in the intensive care unit until November 22, 2004, when he was discharged to a rehabilitation center for wound care. Because of his ongoing sepsis, Mr. Schooley was readmitted to San Angelo Community Hospital three times. In April 2005, a CT scan showed that Mr. Schooley's cancer had metastasized to his liver, but he was unable to start chemo-radiation treatment until May 2005 because of his multiple complications and prolonged recovery after the initial surgery. He passed away on June 11, 2006.

The Schooleys sued Dr. Weatherby, contending that Mr. Schooley experienced significant pain, suffering, and mental anguish in the months after his initial surgery and that he would have been able to start proper and timely cancer treatment if he had received the acceptable standard of care preoperatively and postoperatively from Dr. Weatherby. In support of their claim, the Schooleys timely served two experts' reports. *See id*. § 74.351(a). The report from Dr. Omar Barakat, a surgeon and liver disease specialist, was offered to address Dr. Weatherby's negligence with regard to his management of the splenic injury and his untimely detection and management of the postoperative bleeding. The report from Dr. Stephen C. Cohen, a board-certified oncologist, was offered to address the consequences of the delay in Mr. Schooley's chemotherapy.

---

[2] Anastomosis, in this context, is the union of blood vessels. *See* Webster's Collegiate Dictionary 42 (10th ed. 2001).

[3] Sepsis is a toxic condition resulting from the spread of bacteria or their products from a focus of infection. *Id.* at 1064.

3

Dr. Weatherby filed a motion seeking to dismiss only the Schooleys' claim for wrongful-death. He alleged that the reports of the Schooleys' experts were inadequate, individually and collectively, because they did not state how any breach of the standard of care by Dr. Weatherby proximately caused Mr. Schooley's death. *See id.* § 74.351(r)(6). Both reports, Dr. Weatherby noted, lacked any reference to the proper causation standard: whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm, and without which the harm would not have occurred. *See IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

Dr. Barakat's report, in Dr. Weatherby's view, was inconclusive because it stated only that an oncologist thought that chemotherapy was necessary and that there was a delay, but it did not set forth causation as to Mr. Schooley's death.[4] The Schooleys responded that Dr. Weatherby did not challenge the causal link that Dr. Barakat's report made between Dr. Weatherby's breach of the standard of care and Mr. Schooley's postoperative complications before his death. They further noted that Dr. Barakat did not offer an opinion about the causal significance of the delayed

---

[4] Dr. Weatherby criticizes the following paragraph in Dr. Barakat's report:

In reasonable medical probability, the splenic bleed which developed into a large intra-abdominal hematoma for 5 days resulted in the colonic leak, and consequently severe sepsis and then septic shock, multi-organ failure, prolonged hospitalization with attendant expense and extreme pain and suffering. All of these events caused many months of delay in Mr. Schooley receiving adjuvant chemo-radiation therapy that Dr. Rahman the oncologist felt he needed to complete his battle against advanced rectal cancer. A leak following a low anterior resection is a recognized complication. However, in reasonable medical probability, this colonic leak would have been avoided with proper management of the splenic tear and timely detection and management of postoperative bleeding when the hemoglobin and hematocrit dropped by 2 grams in one day.

4

chemotherapy because he is not an oncologist, but that the causation element was addressed in Dr. Cohen's report.

Dr. Cohen's report, according to Dr. Weatherby, was conclusory because it opined that Mr. Schooley had a cure rate of greater than 50% but did not contain facts establishing that at the time of the alleged malpractice Mr. Schooley had a 50% or greater chance of recovery despite his stage III cancer diagnosis.[5]  Recovery on a health care liability claim is barred when the defendant's negligence deprives the patient of only a 50% or less chance of survival. *See Park Place Hosp. v. Milo*, 909 S.W.2d 508, 511 (Tex. 1995); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993) (holding that Texas law does not recognize action for loss of chance of survival in medical malpractice cases).  Dr. Weatherby argued that the report failed to state facts supporting Dr. Cohen's conclusions that the delayed chemotherapy proximately caused the progression of Mr. Schooley's cancer and his death and that Mr. Schooley's death would not have occurred if the

---

[5] Dr. Weatherby finds fault with the following paragraph in Dr. Cohen's report:

The patient eventually had an abnormal CT scan of his abdomen in April 2005, which subsequently was proven to be liver metastases.  The patient had an exceeding[ly] long delay for what would have been adjuvant chemotherapy.  The patient was seen by a Medical Oncologist, Dr. Fazlur Rahman, shortly after his surgery who suggested that the patient receive adjuvant therapy for his stage III colon cancer . . . .  Optimum timing of adjuvant chemotherapy is essential and would with reasonable medical probability have produced a cure rate of greater than 50%.  Unfortunately, the patient never had the opportunity to receive adjuvant chemotherapy.  The final radiological review of a preoperative CT scan of the abdomen September 2004 and April 2005 indicated that the original suspected lesion was not confirmed on reevaluation.  Therefore, metastases were not known to be present at the time of his initial surgery, and his prolonged recovery phase.  This delay in the adjuvant chemotherapy is the proximal cause of this patient's progressive disease and death.

5

chemotherapy had not been delayed. The Schooleys responded that Dr. Cohen provided a sufficient factual basis linking the chemotherapy delay—caused by Dr. Weatherby's breach of the standard of care—to Mr. Schooley's progressive disease and death. The Schooleys further urged the trial court to deny Dr. Weatherby's motion to dismiss their suit because Dr. Weatherby did not challenge the causal link between his alleged failure to properly detect and manage the splenic tear as well as the postoperative bleeding and Mr. Schooley's pain and suffering during the two months after his surgery with related hospital expenses exceeding $700,000.

After a hearing, the trial court granted Dr. Weatherby's motion, dismissing the Schooleys' suit in its entirety with prejudice. The Schooleys filed a motion for reconsideration, emphasizing that they had pled a survival claim in addition to the wrongful-death claim and that their survival claim was not addressed by Dr. Weatherby's motion to dismiss. Alternatively, if the court found Dr. Cohen's expert report deficient with regard to their wrongful-death claim, the Schooleys requested a thirty-day extension to cure any deficiency. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (West Supp. 2008); *see also Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (rejecting argument that deficient report may be cured only by amendment of original expert's report and holding that claimant may cure deficient report by serving new report from separate expert). The court issued an order that denied the Schooleys' motion for reconsideration but did not address the thirty-day extension that they sought as alternative relief.[6] This appeal followed.

---

[6] The Schooleys do not present any issue about their requested thirty-day extension.

6

## DISCUSSION

### Purpose of expert reports under chapter 74

Section 74.351 of the civil practice and remedies code requires a claimant asserting a health care liability claim to serve one or more expert reports on each party no later than the 120th day after the filing of the original petition. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Expert reports required under section 74.351(a) are intended to serve two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning, and (2) to "provide a basis for the trial court to conclude that the claims have merit." *Leland v. Brandal*, 257 S.W.3d 204, 206-07 (Tex. 2008) (quoting *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). The reports must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006). A motion challenging the adequacy of an expert's report shall be granted only if the report does not represent an objective good faith effort to comply with the statutory definition of an "expert report." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).

### Standard of review

We review a trial court's decision to dismiss a health care liability claim for failure to comply with the expert-report requirements of section 74.351 under an abuse of discretion standard. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). The trial court abuses

7

its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Wright*, 79 S.W.3d at 52 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). Because a trial court has no discretion in determining what the law is or applying the law to the facts, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of its discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

**Survival claim**

In their first issue, the Schooleys assert that the trial court's dismissal of their suit against Dr. Weatherby was an abuse of discretion because their survival claim was pled adequately. The Schooleys informed the trial court in their written response, at the hearing on the motion to dismiss, and in their motion for reconsideration that they pled two causes of action: a wrongful-death claim and a survival claim based on personal injuries sustained by Mr. Schooley while he was alive. A survival action, according to the Texas Supreme Court, is an action that belongs to the decedent and is derivative of his rights:

> [Under the Texas Survival Statute], a decedent's action survives his death and may be prosecuted in his behalf. The survival action, as it is sometimes called, is wholly derivative of the decedent's rights. The actionable wrong is that which the decedent suffered before his death. The damages recoverable are those which he himself sustained while he was alive and not any damages claimed independently by the survival action plaintiffs (except that funeral expenses may also be recovered if they were not awarded in a wrongful death action). Any recovery obtained flows to those who would have received it had he obtained it immediately prior to his death—that is, his heirs, legal representatives and estate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b) (West 1997). The parties to a survival action seek adjudication of the decedent's own claims for the alleged injuries inflicted upon [him] by the defendant.

8

*Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849-50 (Tex. 2005). Dr. Weatherby's brief does not directly address the Schooleys' first issue concerning the trial court's dismissal of their survival claim.[7] However, he does suggest that the wrongful-death claim was the only damage, harm, and injury alleged by the Schooleys, noting that "Appellants plead a medical negligence death action, a viable cause of action and, Appellants' pleadings were not vague as to the harm and damage claimed: Mr. Schooley's untimely death." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (requiring expert reports to provide causal relationship between health care provider's failure to meet standard of care and plaintiff's claimed injury, harm, or damages).

The injury, harm, and damages claimed by the Schooleys are stated in their petition. To determine whether the Schooleys' survival claim was adequately pled, we consider whether their petition gave Dr. Weatherby "fair notice" of that claim. The fair notice standard of pleading looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000). According to the Texas Supreme Court, a petition that provides "fair and adequate notice of the facts upon which the pleader bases his claim" is sufficient. *Id*. at 897 (quoting *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)). This rule is intended to "give the opposing party information sufficient to enable him to prepare a defense." *Id*.

---

[7] Dr. Weatherby's brief frames this appeal as a single issue: whether the trial court abused its discretion in granting the motion to dismiss based on expert reports that did not state how any breach of the standard of care by Dr. Weatherby proximately caused Mr. Schooley's death.

The fifth page of the Schooleys' Second Amended Petition states:

> Plaintiffs will show the court and jury that CLIFFORD SCHOOLEY experienced significant pain and suffering and mental anguish in the many months after his initial surgery and the sequela that followed. In addition, they will show that in the absence of Defendant Dr. Weatherby's negligence, CLIFFORD SCHOOLEY could reasonably have been expected to live years into the future with a quality [life] had he been properly treated by Defendant. Medical expenses were incurred prior to his death, and funeral and burial expenses were incurred following his death. For these losses, Plaintiffs will ask the Court to award actual damages against Defendant.

During the hearing on the motion to dismiss, counsel for Dr. Weatherby opined that this pleading did not state a survival claim: "The Plaintiff[s] also argue[] in their response, Your Honor, that this is not simply a death case, that this is also a survival case in which Mr. Schooley's damages are recoverable and that Doctor Barakat's report addresses that. I don't read their Second Amended Petition that way."[8] We disagree. We are persuaded that the Schooleys' pleading in this case fits the Texas Supreme Court's description of a survival action because the actionable wrong is that which the decedent suffered before his death and the damages sought are those which he himself sustained while he was alive. *See Lovato*, 171 S.W.3d at 849-50.

---

[8] During the hearing on the motion to dismiss, counsel for Dr. Weatherby volunteered that Dr. Barakat's report was sufficient to support a survival claim:

> I will tell the Court this, in the event that the Court reads the Plaintiffs' Second Amended Petition to provide for a survival action, I think Doctor Barakat's report is sufficient to establish the standard of care, breach, and causation of damage to Mr. Schooley. I don't read their pleading as pleading a survival action. Again, the damages that they seek in the paragraphs tied to Doctor Weatherby's negligence are for untimely death and that's why our motion addressed the wrongful death case.

10

We conclude that the wrongful-death claim was not the only cause of action supported by the Schooleys' pleadings—they also pled a survival claim that was not addressed by Dr. Weatherby's motion to dismiss. The trial court's order dismissing the Schooleys' suit granted greater relief than that which was requested in Dr. Weatherby's motion. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001) (noting that order granting summary judgment motion which addresses all of plaintiff's claims when filed but does not address claims timely added by amendment after motion is filed is reversible order because it grants greater relief than movant was entitled to receive); *Crooks v. Moses*, 138 S.W.3d 629, 641 (Tex. App.—Dallas 2006, pet. denied) (citing *Lehmann* and holding that summary judgment motion seeking dismissal of negligent activity and premises liability claims did not pray for any relief on negligent-undertaking claim and thus court's order erroneously granted greater relief than requested). Because the Schooleys' survival claim was dismissed along with the wrongful-death claim in the trial court's order, we conclude that the dismissal of the Schooleys' suit was an abuse of the trial court's discretion. We sustain the Schooleys' first issue.

**Wrongful-death claim**

In their second issue, the Schooleys contend that the trial court's dismissal of their suit against Dr. Weatherby was an abuse of discretion because their wrongful-death claim was supported by expert reports that provided a fair summary of the experts' opinions about causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) (authorizing use of more than one expert report to address issues such as liability and causation); *Funderburk*, 253 S.W.3d at 208 (noting that claimant may satisfy any requirement of section 74.351 by serving reports of separate experts). To

11

satisfy the causal-relationship element in subsection 74.351(r)(6), experts must explain the basis of the statements in their reports to link their conclusions to the facts. *See Wright*, 79 S.W.3d at 52; *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999).

Dr. Barakat's ten-page report stated that after Dr. Weatherby tore the spleen, he breached the acceptable standard of care through his inadequate management of bleeding from the spleen and his untimely detection and management of post-operative bleeding. Specifically, the report states that Dr. Weatherby deviated from the acceptable standard of care by failing to control the bleeding from the spleen before closing Mr. Schooley, by placing a Jackson-Pratt drain to treat the laceration from Mr. Schooley's spleen, and by failing to act expeditiously in ordering a CT scan and performing exploratory laparotomy on Mr. Schooley when he showed clinical signs of continuous hemorrhage from "post-op day 2 through post-op day 5." The report then explains thatdelayed treatment of the bleeding spleen for five days allowed a large blood clot to develop, which cultivated bacteria, applied pressure that decreased blood supply to the newly fashioned anastomosis (blood-vessel network), and caused it to rupture. The ruptured anastomosis allowed colonic contents to begin leaking into the abdominal cavity, resulting in Mr. Schooley's severe sepsis, septic shock, and multi-organ failure. Dr. Barakat's report states that these events caused many months of delay in the chemo-radiation therapy that was recommended by oncologist Dr. Fazlur Rahman to complete Mr. Schooley's battle against cancer. This report connects Dr. Weatherby's breach of the standard of care (the inadequate management of Mr. Schooley's bleeding spleen after Dr. Weatherby tore it) to Mr. Schooley's postoperative complications before his death (bleeding from spleen developing into clot, bacterial cultivation, pressure on the

12

anastomosis and its rupture, sepsis, multiple organ system failure, four additional surgeries, and prolonged recovery phase during which chemotherapy was delayed). The Schooleys acknowledge that Dr. Barakat's report did not offer an opinion about the consequences of the delayed chemotherapy because Dr. Barakat is not an oncologist. Instead, the Schooleys relied on the report provided by Dr. Cohen, who is an oncologist, to address that matter.

Dr. Cohen's report was offered to link Dr. Weatherby's breach of the standard of care to Mr. Schooley's death. It states that when Mr. Schooley underwent his resection of a colon cancer in September 2004, his CT scans showed that the cancer appeared to be localized. Shortly after that initial surgery, oncologist Dr. Rahman recommended treating Mr. Schooley's stage III cancer with chemotherapy. But there was an "exceeding[ly] long delay" in Mr. Schooley's chemotherapy. He had multiple complications from the injury to his spleen and a "prolonged, life-threatening recovery from multiple organ system failure and sepsis." While "optimum timing of adjuvant chemotherapy is essential and would with reasonable medical probability have produced a cure rate of greater than 50%," Mr. Schooley "never had the opportunity to receive adjuvant chemotherapy." Relying on CT scans, Dr. Cohen's report notes that before Mr. Schooley's initial surgery and during his prolonged recovery phase, the cancer was not known to have metastasized. It was not until April 2005 that Mr. Schooley had an abnormal CT scan, revealing that his cancer had metastasized to the liver. The "delay in adjuvant chemotherapy," according to Dr. Cohen, was "the proximal cause of [Mr. Schooley]'s progressive disease and death."

Dr. Weatherby faults Dr. Cohen's report for failing to "set forth facts to support his conclusion that delay in the adjuvant chemotherapy proximately caused the progression of

13

Mr. Schooley's advanced colo-rectal cancer and his death, without which Mr. Schooley's death would not have occurred." Dr. Weatherby also asserts that we cannot know whether Mr. Schooley's cancer would have responded to chemotherapy, whether he would have experienced a period of remission, suffered complications from the chemotherapy, or had his cancer "reappear and/or spread only to eventually succumb to [his] disease." As a preliminary matter, we disagree with the suggestion that the Schooleys were statutorily required to produce an expert report stating that Mr. Schooley's cancer would never reappear or that Mr. Schooley would not eventually succumb to his disease. Such an interpretation misapplies the causation element in subsection 74.351(r)(6) of the civil practice and remedies code and would effectively bar every cancer patient from proceeding with a health care liability claim unless the patient could provide an expert report stating that the patient's "chance" of recovery is 100%. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see Milo*, 909 S.W.2d at 511 (noting that patient's recovery is barred when health care provider's negligence deprives patient of only 50% or less chance of survival) (citing *Kramer*, 858 S.W.2d at 400).

Here, the Schooleys sought to meet the requirements of subsection 74.351(r)(6) through two experts' reports. The function of Dr. Barakat's report, according to the Schooleys, was to explain how Dr. Weatherby's conduct breached the standard of care and to connect that breach to Mr. Schooley's postoperative complications and the delayed chemotherapy before he died. The function of Dr. Cohen's report was to pick up where Dr. Barakat's report left off, linking the delayed chemotherapy to the progression of Mr. Schooley's disease and death and providing a sufficient basis

for the court to conclude that the Schooleys' wrongful-death claim against Dr. Weatherby has merit. *See Palacios*, 46 S.W.3d at 879.

Dr. Cohen's report included the following facts: Mr. Schooley had stage III colon cancer with four of seven positive lymph nodes and pericolonic fat involvement; his cancer appeared to be a localized phenomenon when the resection surgery was performed; he had multiple complications stemming from an injury to the spleen; he had a life-threatening recovery from multiple organ system failure and sepsis; he experienced an exceedingly long delay in starting oncologist-recommended chemotherapy; and by April 2005 his cancer had metastasized to the liver, an area where metastases were not known to be present in September 2004. How those facts figured into Dr. Cohen's opinion about Mr. Schooley's cure rate is unexplained in the report. No reference is made to recognized studies, scientific journals, or texts to support Dr. Cohen's conclusion that timely chemotherapy would, with reasonable medical probability, have provided Mr. Schooley with a cure rate of greater than 50% before his cancer had metastasized to the liver. *See Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 247 (Tex. App.—San Antonio 2004, no pet.) (noting that expert's report was inadequate because it did not explain medical basis or reasoning for his conclusion that patient "in all reasonable medical probability" would have survived); *Hodgkins v. Bryan*, 99 S.W.3d 669, 674-75 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that expert's affidavit was conclusory because it did not state facts or studies to support his conclusion that patient would have survived with prompt treatment).[9] Here, evidence

---

[9] *Cf. Romero v. Lieberman*, 232 S.W.3d 385, 391 (Tex. App.—Dallas 2007, no pet.) (rejecting appellants' arguments that expert report was conclusory because reasoned basis for opinion was provided; report included statement that "Since [patient] survived until 5:00 p.m. on

15

that cancer was present in Mr. Schooley's liver in 2005 when it was not known to be there in 2004 is insufficient, without more, to establish the element of causation.

The trial court could have reasonably determined that the assertion in Dr. Cohen's report that chemotherapy "would with reasonable medical probability have provided a cure rate of greater than 50%" was a conclusory statement and did not represent a good-faith effort to summarize the causal relationship between Dr. Weatherby's deviation from the applicable standard of care and Mr. Schooley's death. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6); *Wright*, 79 S.W.3d at 53. Thus, we conclude that the court did not abuse its discretion by granting Dr. Weatherby's motion to dismiss with regard to the Schooleys' wrongful-death claim. We overrule the Schooleys' second issue.

## CONCLUSION

Having sustained the Schooleys' first issue and overruled the second, we affirm the trial court's order on the wrongful-death claim, reverse the order on the survival claim, and remand this cause to the trial court for further proceedings consistent with this opinion.

---

May 15th with totally inadequate care (no antibiotics, too little oxygen, too little fluids, no medications to maintain blood pressure and no monitoring for acidosis) if he had been transferred to Terrel[l] Medical Center and given the proper support within twenty-four [hours] of the onset of symptoms, it is my opinion that his chances of survival were greater than 50%.") (citing *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (opinion with reasoned basis not conclusory)).

16

_____

                                      W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Remanded in part

Filed:   November 6, 2008