COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| 3D/I + PERSPECTIVA, A TEXAS JOINT VENTURE, | § | No. 08-08-00059-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | County Court at Law No. 3 |
| | § | |
| CASTNER PALMS, LTD., | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 2004-4188) |
| | § | |

## O P I N I O N

3D/I + Perspectiva ("3D/I") – a joint venture – appeals the jury's verdict for Castner Palms, Ltd. ("Castner Palms") stemming from the latter's suit for negligence. In two issues, 3D/I contends that the trial court erred by denying its: (1) motion for instructed verdict when Castner Palms failed to present expert testimony applicable to a construction-management firm's standard of care in pursuit of its negligence claim; and (2) jury instruction on the professional standard of care. Finding 3D/I's first issue dispositive, we reverse and render judgment for 3D/I.

## BACKGROUND

From the limited record presented to this Court, it appears that Patriot Castner Joint Venture previously owned several parcels of land, and Glen Kistenmacher, an engineer, prepared a master drainage plan for the properties in 1994. The master drainage plan provided that each property should include an underground pipe for proper drainage from rainwater. The pipes were not put in and portions of those undeveloped properties were later sold to various entities, including the County of El Paso. Nevertheless, a city ordinance required all drainage plans to conform with the existing

approved master plan.

The County's property is adjacent to the Castner Palms' property. The properties are separated by a rock wall. In 2002, the County contracted with 3D/I to manage the construction of an annex building. The relevant provisions of the contract provided that the County would contract with consultants, architect, engineers, and construction contractors to provide the design, construction, and construction administration for the project, and that 3D/I would supervise, direct, and manage the complete construction of the project. The contract also limited 3D/I's duties to coordinating and scheduling the parties' work and funding, reviewing the design documents for adherence to "requirements, clarity, constructability and completeness," making recommendations to the County regarding design programs, design standards, guidelines, and constructability, and guarding against defects and deficiencies in the contractor's work as set out in the contracts. The contract further stated that 3D/I would be judged by the "standards and quality prevailing among first-rate, nationally recognized design/construction management firms of knowledge, skill and experience engaged in projects of similar size and complexity."

In accordance with the contract, the County, in 2003, contracted with McCormick Architecture, L.L.C, and Vistacon, Inc. ("Vistacon") to develop the property and build the annex. Vistacon, in turn, engaged Roe Engineering, L.C., ( "Roe") to perform all engineering work required to prepare the plans for the annex. For drainage purposes, Roe designed a temporary retention pond, and Vistacon constructed it.[1] The pond only accounted for rainwater falling on the County's property and not for uphill water that might flow onto the property. It did not comply with the drainage master plan; therefore, it did not conform to the city ordinance. In the course of the construction of

---

[1] When construction reached 50 percent, the plans provided that the contractors would connect to an underground pipe for drainage purposes.

the annex, the retention pond overflowed during a rainstorm, causing the apartments located on the Castner Palms' property to flood.

At trial, Castner Palms presented expert testimony that the drainage pond was responsible for the flooding.[2]  Castner Palms did not present any evidence, apart from the contract itself, as to the standard of care a construction-management firm of the same discipline was required to exercise in supervising contractors.  Accordingly, 3D/I moved for an instructed verdict, arguing that expert testimony was necessary to show that it had breached the applicable standard of care:  "Plaintiff has not introduced any expert testimony of the standard of care to be exercised by an architectural firm performing project management services similar to those provided by Defendant."  In response, Castner Palms argued that because the standard of care was contained in the contract, which was admitted into evidence, expert testimony was unnecessary.  The trial court determined that Castner Palms was not required to present expert testimony on the professional standard of care and denied the motion for instructed verdict.

## ANALYSIS

3D/I's first issue complains of the trial court's denial of its motion for instructed verdict. 3D/I does not challenge Kistenmacher's expert testimony showing the poorly constructed pond was responsible for the damage to Castner Palms.  Rather, 3D/I contends that Castner Palms failed to present expert testimony as to the standard of care exercised by a construction-management firm in a supervisory capacity.  Castner Palms responds that the jury could have relied on common knowledge in assessing the appropriate standard of care.

*Standard of Review*

---

[2]  Castner Palms originally sued Roe, Vistacon, and 3D/I; however, the suit against Roe and Vistacon settled.

To avoid an instructed verdict, Castner Palms was required to offer evidence for each element of its negligence claim. *Hager v. Romines*, 913 S.W.2d 733, 734-35 (Tex. App. – Fort Worth 1995, no writ). Thus, Castner Palms had to show 3D/I owed a legal duty to Castner Palms, 3D/I breached that duty, and damages proximately resulted from the breach. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

The determination of whether expert testimony is necessary to establish negligence is a question of law, which we review *de novo*. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004). Expert testimony is necessary to establish the applicable standard of care "when the alleged negligence is of such a nature as not to be within the experience of the layman." *Id*. at 90; *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). In determining whether expert testimony is necessary to establish negligence, we consider whether the conduct at issue involved the use of specialized equipment and techniques unfamiliar to the ordinary person. *FFE Transp. Servs., Inc.*, 154 S.W.3d at 91. In such a case, the expert testimony must establish both the standard of care and the violation of that standard. *Simmons v. Briggs Equipment Trust*, 221 S.W.3d 109, 114 (Tex. App. – Houston [1st Dist.] 2006, no pet.); *Hager*, 913 S.W.2d at 734-35.

*Application*

The pleadings alleged that 3D/I failed to properly supervise the contractors' design and construction of the drainage retention pond. 3D/I's understanding of its contractual obligations was that it would oversee the complete construction of the project, and facilitate the development of the plans and the construction between the design and construction contractors, and the County. 3D/I denied that it was responsible for ensuring that adequate provisions for drainage on the site was sufficient to contain water that flows upon it. Rather, 3D/I claimed that was Roe's responsibility. According to 3D/I, its duties were limited to supervising the work as presented to it by the plans,

noting that its obligation to review the design documents only extended to a review for adherence to requirements, clarity, constructability, and completeness. Because there were no indications of any problems with the construction of the pond, and because Roe's plan achieved the required city permit, 3D/I believed the plans were sufficient to discharge its responsibilities under the contract.

As noted before, the contract between the County and 3D/I stated that 3D/I would be judged by the "standards and quality prevailing among first-rate, nationally recognized design/construction management firms of knowledge, skill and experience engaged in projects of similar size and complexity." In other words, the contract provided that 3D/I's actions would be judged according to other construction-management firms in the same discipline engaging in similar projects. That discipline's standard of care, however, is not stated in the contract. Thus, the question presented is whether Castner Palms was required to present expert testimony as to the standard of care such a firm should exercise in supervising a similar project.[3]

In determining whether expert testimony was required in this case, we find guidance in two recent cases. In *Fulgham*, a trucking company leased a trailer to a long-haul trucker, and while transporting goods, the trailer's upper coupler assembly, which contained a loose or rusty bolt, broke loose, causing the trailer to separate from the tractor and overturn. *Fulgham*, 154 S.W.3d at 86. The Court found that expert testimony was required to establish the standard of care since "[t]he upper coupler assembly, kingpin, and base rail of a refrigerated trailer are specialized equipment, and the proper inspection and maintenance of those parts involve techniques unfamiliar to the ordinary person." *Id*. at 91. Although the Court recognized that a layman may be able to detect whether a visible bolt is loose or rusty, the Court held that whether that looseness or rust is sufficient to create

---

[3] Castner Palms characterizes the issue as whether 3D/I can limit its common-law duty owed to third parties by contractual arrangements. However, whether any common-law duty may be contractually limited is not the issue. Rather, the issue is what standard of care 3D/I should have exercised in supervising the construction project.

a danger required specialized knowledge in the tractor-trailer industry. *Id*. Thus, an expert was required to testify as to the standard of care. *Id*.

Similarly, in *Simmons*, a worker brought a negligence action against his maintenance company when the rail-car mover's loose or worn hydraulic hose caught fire as he used the mover to transport railroad cars. *Simmons*, 221 S.W.3d at 111-12. Finding the practices, procedures, and industry standards with respect to the inspection and maintenance of a rail-car mover engine not matters within a lay person's general knowledge, the court determined that expert testimony regarding the appropriate standard of care and whether the maintenance company breached that standard was required. *Id.* at 114-15. Although the court acknowledged that an ordinary person would be able to detect whether a hydraulic hose is loose or worn, the court noted that determining when that looseness or wear was sufficient to create a dangerous condition would require specialized knowledge. *Id*. at 115. "Without expert evidence or testimony, there was no evidence that [the maintenance company] violated the standard of care for the inspection and maintenance of the engine, hydraulic pump, or other internal parts of [the rail-car mover] . . . [nor was there any] factual or evidentiary support in the record concerning . . . the actions that a reasonable maintenance company would have taken with respect to the hydraulic pump and hose." *Id*.

In this case, we cannot conclude that a layman would know whether a construction-management firm's supervisory duties extended beyond simply overseeing the construction as set out in the approved contractors' design plans. This is not a case where the construction-management firm hired the contractors and approved their plans; rather, the contract provided, and the record so reflects, that El Paso County hired the contractors and approved the plans while 3D/I supervised the construction of those approved plans. Castner Palms argues that Kistenmacher's expert testimony that Roe negligently designed the retention pond was sufficient for a layman to determine that 3D/I

breached its supervisory duties under the contract. Although a layman may be able to conclude from Kistenmacher's testimony that the pond was poorly designed and caused the flood, we believe that whether a construction-management firm's supervisory duties included more than ensuring that the approved plans were built according to the requisite specifications called for in the plans requires specialized knowledge in the construction-management firm industry. *See, e.g., Fulgham*, 154 S.W.3d at 91; *Simmons*, 221 S.W.3d at 115 (requiring expert testimony of industry standards).

Castner Palms argues that since the standard of care was contained within the contract, whether that standard was breached is a question of law reviewed *de novo*. Although we agree that interpretations of contractual provisions are reviewed *de novo*, the contract here did not explain the standard of care; rather, it simply stated that 3D/I would be held to a standard of care as other construction-management firms in the same discipline and engaged in similar projects. There was never any evidence presented as to what that standard of care was. Furthermore, the trial court never determined whether 3D/I breached the standard of care described in the contract, nor was the jury instructed that 3D/I did so. Rather, the jury was instructed on "ordinary care," and the sole question submitted was whose negligence proximately caused the damage to Castner Palms. In other words, there was never any evidence, interpretation, or determination of the applicable standard of care for the jury to properly decide negligence on the part of 3D/I.

Further, even if we were to impute some explanation of the applicable professional standard of care into the contract, expert testimony would still be required to establish that standard of care. In *Battaglia*, the Supreme Court held that although a contract between a hospital and two anesthesiologists' professional associations obligated the associations to ensure that the staff they supplied or supervised complied with standards specified in the contract, evidence that staff breached those standards during a patient's surgery at the hospital did not establish the requisite standard of

care for a medical-malpractice action against the professional association; rather, competent expert testimony was necessary to establish the standard of care. *See Battaglia v. Alexander*, 177 S.W.3d 893, 899 (Tex. 2005). Similarly here, even if the contract identified the applicable standard of care, competent expert testimony was nonetheless required to establish that standard for construction-management firms.[4]

Accordingly, because no expert testimony, much less any evidence, was presented as to the applicable standard of care, we find the trial court erred by denying 3D/I's motion for directed verdict. We therefore sustain 3D/I's first issue, reverse the judgment of the trial court, and render judgment for 3D/I. *See Hager*, 913 S.W.2d at 735-36 (rendering take-nothing judgment against plaintiffs who failed to produce necessary expert testimony on applicable standard of care). Given our disposition, we need not reach 3D/I's second issue.


GUADALUPE RIVERA, Justice

February 10, 2010

Before Chew, C.J., Rivera, J., and Garcia, Judge
Garcia, Judge, sitting by assignment

---

[4] Castner Palms asserts that Kistenmacher's expert testimony was sufficient to establish a breach of 3D/I's contractual duties. However, Kistenmacher's testimony was solely limited to the cause of the flooding, that is, the poorly designed and constructed retention pond. Thus, Kistenmacher's opinion solely concerned the negligence of Roe and Vistacon, the contractors that designed and constructed the pond. Kistenmacher did not discuss a construction-management firm's standard of care in supervising the design and construction of a similar project.